THE PEOPLE OF THE STATE OF NEW YORK, Appellant, *v.* EDWARD J. DOOLEY et al., Respondents.

1. CONSTITUTIONAL LAW — PROVISION FOR ELECTIVE SYSTEM AS TO CITY MAGISTRATES IN ONE PORTION OF CITY OF NEW YORK AND APPOINTIVE SYSTEM IN THE OTHER INVALID — ELECTION BY CONGRESSIONAL DISTRICTS INVALID. Section 1392 of the revised charter of the city of New York (L. 1901, ch. 466) amending the original charter, which provided that city magistrates should be appointed by the mayor for a term of ten years, by directing that those within the borough of Brooklyn should be elected instead of appointed for a term of six years to commence January 1, 1902; one magistrate to be elected in each congressional district of the borough and two at large, those in the boroughs of Manhattan and the Bronx to be appointed as before, violates in two particulars section 17 of article 6 of the Constitution providing that judicial officers in cities whose election or appointment is not otherwise provided for shall be chosen by the electors of such cities or appointed by some local authorities thereof, and is void: 1. The legislature has power to adopt but one method of selecting such officers, either by election or appointment. It cannot direct the use of both methods in the same city by enacting that they shall be elected in one

portion thereof and appointed in the other. 2. Such officer's must be chosen, not by the electors of a congressional district or of a borough, but by all of the electors of the city.

2. When Limitation in Certificate of Appointment May Be Regarded as Surplusage and Appointment Regarded as for a Full Term. Where it appears that after the expiration of the terms of the magistrates in the borough of Brooklyn in office at the time of the passage of the amendment, the mayor was compelled by mandamus to appoint their successors, and limited their terms of office by certificates reciting that they were appointed "for the unexpired portion of the term which commenced May 1, 1901, and which ended December 31, 1901," it must be held that the attempted limitation of the term is a nullity which may be treated as mere surplusage and that their appointments are valid for a full term of ten years.

*People* v. *Dooley*, 69 App. Div. 512, affirmed.

(Argued March 24, 1902; decided May 13, 1902.)

Appeal from a judgment entered March 18, 1902, upon an order of the Appellate Division of the Supreme Court in the second judicial department, affirming an interlocutory judgment overruling a demurrer to the answer entered upon a decision of the court at Special Term.

This appeal is taken by permission of the Appellate Division upon two questions certified to this court for decision : *First.* "Whether the demurrer to said answer ought to have been overruled." *Second.* "Whether the provisions of the charter of the Greater New York, under which elections were had of city magistrates in the borough of Brooklyn, city of New York, at the general election in 1901, were unconstitutional." The nature of the action and the facts, so far as material, are stated in the opinion.

*John C. Davies, Attorney-General* (*William J. Carr, George W. Wingate* and *James McKeen* of counsel), for appellant. Section 1392 of the revised charter of the city of New York is not unconstitutional in so far as it provided for the election of the defendant new magistrates. (*Koch* v. *Mayor, etc.*, 152 N. Y. 75 ; *People ex rel.* v. *Rice*, 135 N. Y. 483 ; *People* v. *Draper*, 15 N. Y. 534 ; *N. Y. F. Dept.* v. *A. S. S. Co.*, 106 N. Y. 566 ; *Curtin* v. *Bartin*, 139 N. Y. 505 ;

*People ex rel.* v. *Porter,* 47 N. Y. 375; *People* v. *Albertson,* 55 N. Y. 55; *Brown* v. *Holland,* 97 Ky. 240; *State* v. *McAllister,* 88 Tex. 284; *Petterson* v. *Welles,* 1 App. Div. 8.) If the law was unconstitutional, the act of appointment was null and void, as the mayor did not intend to make an appointment for ten years, but only for less than six months. (*People ex rel.* v. *Hall,* 104 N. Y. 170.)

*John L. Hill, Jerry A. Wernberg, Robert H. Elder* and *William D. Veeder* for Edward J. Dooley et al., respondents. The change of name of the old officers did not change their official functions. The Constitution preserves to the localities the control of the official functions to which it refers. (*People* v. *Raymond,* 37 N. Y. 431; *People* v. *Pinckney,* 32 N. Y. 382; *People* v. *Crooks,* 53 N. Y. 648; *Worthington* v. *L. G. & A. Co.,* 164 N. Y. 92.) The judiciary article of 1867–69 (Art. VI) was a limitation of legislative power respecting the mode of electing all judicial officers. (*People* v. *Porter,* 90 N. Y. 73; *Sill* v. *Corning,* 15 N. Y. 297; *People* v. *Bull,* 46 N. Y. 63; *Koch* v. *Mayor, etc.,* 152 N. Y. 85; *People* v. *Shepherd,* 36 N. Y. 285.) The offices in question do not fall under section 18 of the Constitution of 1894 which, for all present purposes, is the same as section 19 of the amendment of 1867–9. (*People* v. *McKinney,* 52 N. Y. 378.) The amendments of 1901 to the city charter, so far as they affect the selection of city magistrates of the second division, provide an unconstitutional departure from the previously expressed and retained mode through appointment by the mayor. (*People* v. *McKinney,* 52 N. Y. 378; *Rathbone* v. *Wirth,* 6 App. Div. 316; 150 N. Y. 459; *People* v. *Crooks,* 53 N. Y. 648; *People* v. *Foley,* 148 N. Y. 677; *People* v. *Randall,* 151 N. Y. 133; *Stuber* v. *Coler,* 164 N. Y. 256; *People ex rel.* v. *Van Wyck,* 35 Misc. Rep. 211; *People* v. *Bd. of Suprs.,* 139 N. Y. 528.) The attempt to give electors of one territory power to select a local inferior judicial officer who should have power to exercise official functions over electors outside that territory is unconstitu-

tional. (*Waters* v. *Langdon,* 40 Barb. 408; *Gerraty* v. *Reid,* 78 N. Y. 67; *Brandon* v. *Avery,* 22 N. Y. 469.) The suggestion that the powers of one of these elected magistrates might be confined to his congressional district does not meet the difficulty. (*Stuart* v. *Palmer,* 74 N. Y. 183; *Cox* v. *State,* 144 N. Y. 396–408; *Gilman* v. *Tucker,* 128 N. Y. 190; *People* v. *Porter,* 90 N. Y. 73.) The suggestion that the amendment of 1901 merely dealt with terms of office of city magistrates ought not to prevail. They indeed dealt with terms, but in an unlawful manner and for unauthorized purposes. (*People ex rel.* v. *Van Wyck,* 35 Misc. Rep. 211.) No part of the amendments of 1901 which relate to these offices can be saved. (*Rathbone* v. *Wirth,* 150 N. Y. 459.) The old terms of these offices and the rights of these old magistrates as incumbents thereof were unaffected by the amendments of 1901. The mayor's limitation in his certificates of appointment was void. It was not really a limitation at all, but a mere erroneous construction of the law. (*Jetter* v. *State,* 1 McC. 151; *People* v. *Hall,* 104 N. Y. 176.)

*David B. Hill* for E. Gaston Higginbotham et al., respondents. The amendment of 1901 is unconstitutional. (*Whitmore* v. *Mayor, etc.,* 67 N. Y. 21; *People ex rel.* v. *Murray,* 73 N. Y. 535; *Matter of Gage,* 141 N. Y. 117; *People ex rel.* v. *President, etc.,* 83 Hun, 135; *People ex rel.* v. *Bd. Suprs.,* 139 N. Y. 527; *Koch* v. *Mayor, etc.,* 152 N. Y. 72; *Worthington* v. *L. G. & A. Co.,* 164 N. Y. 81; *Curtin* v. *Bartin,* 139 N. Y. 502; *People* v. *Porter,* 90 N. Y. 68; *People* v. *Raymond,* 37 N. Y. 431.) The limitation inadvertently inserted in the defendants' official appointment by the mayor of New York does not change the length of the term as fixed by statute. (*People ex rel.* v. *Hall,* 104 N. Y. 170; *People ex rel.* v. *Lord,* 9 Mich. 227; *Stadler* v. *City of Detroit,* 13 Mich. 346.)

WERNER, J. This action is in the nature of quo warranto, brought by the attorney-general upon his own information,

pursuant to section 1948 of the Code of Civil Procedure The action is primarily against certain persons alleged to have usurped and entered into the office of city magistrates in the boroughs constituting the second division in the city of New York. Pursuant to section 1954 of the Code, the persons who claim to have been elected to said offices, and rightfully entitled thereto, are also made defendants. The allegations of the pleadings need not be recited, since they are sufficiently indicated by the facts which must be discussed in connection with the questions of law to be decided. Suffice it to say that the complaint proceeds upon the theory that under section 1392 of the revised charter of New York city, enacted in 1901, there was a valid election in the fall of that year at which certain persons were elected to the office of city magistrates in the boroughs of Brooklyn, Queens and Richmond, who are prevented from discharging the duties thereof and receiving the emoluments belonging thereto, by the unlawful usurpation of said office by the defendants above named. Said defendants, by their answer, challenge the constitutional validity of said charter provisions, and allege their own legal incumbency of said office pursuant to legal appointments made prior to said election. To this answer the plaintiffs interposed a demurrer on the ground that it is insufficient in law. The demurrer was overruled and from the interlocutory judgment entered upon that decision the plaintiffs appealed to the Appellate Division, where it was affirmed by a divided court. The questions certified to this court involve not only the sufficiency of pleading, but the serious constitutional questions which underlie the action.

For the purposes of administration of criminal justice, the greater city of New York, under its original charter, enacted in 1897, was divided into two divisions. In the first division were the boroughs of Manhattan and the Bronx; in the second, the boroughs of Brooklyn, Queens and Richmond. (Sec. 1390.) When said charter went into effect the office of city magistrate was in existence in the former city of New York, having been established by chapter 601 of the Laws of 1895.

Section 1392 of said charter provided that the city magistrates in office when it took effect should continue to hold their office until the expiration of their respective terms, and should be known as the city magistrates of the first division; that their successors should be appointed in the same manner and have the same powers and duties as provided by said chapter 601, Laws of 1895. The act just referred to provided that such magistrates should be appointed by the mayor for terms of ten years. On account of the different conditions which prevailed in the boroughs of Brooklyn, Queens and Richmond, the charter provisions relating to the office of city magistrate in these boroughs were more elaborate than those above summarized. It was provided that the police justices in the former city of Brooklyn, who should be in office on the 31st day of January, 1898, should continue in office until the expiration of their respective terms, but should thereafter be known as city magistrates of the second division of the city of New York and have the powers and duties thereinafter prescribed for city magistrates, and no other; that additional magistrates should be appointed, who should be residents of the boroughs of Queens and Richmond respectively, and (Sec. 1394) that "the successors of said magistrates shall at all times thereafter be appointed by the mayor of said city and shall be residents and electors of the borough from which said magistrates whom they shall be appointed to succeed were appointed, and shall hold office for ten years."

In section 1396 the powers of city magistrates in said second division were defined as follows: "The said magistrates appointed or continued in office pursuant to this title, shall have and exercise within the said second division such powers as are conferred by law upon the city magistrates in the city of New York, by chapter six hundred and one of the laws of eighteen hundred and ninety-five, and the acts amending the same, except as herein otherwise provided."

Section 3, chapter 601, Laws of 1895, provides: "On and after the first day of July, eighteen hundred and ninety-five, the city magistrates appointed pursuant to this act shall

have and shall exercise all the powers and jurisdiction, not inconsistent with the provisions of this act, which, on the thirtieth day of June, eighteen hundred and ninety-five, shall be vested by law in the police justices, except proceedings respecting bastards."

Thus far we have a uniform system under which city magistrates were to be appointed in both divisions of the Greater New York. Broadly stated, their powers were the same as those formerly possessed by the police justices in the old city of New York.

In 1901 the legislature revised the charter of Greater New York (Chap. 366, Laws 1901). It provided for the election of city magistrates within the borough of Brooklyn in lieu of their appointment. Section 1392 of the revised charter provides: "At the general election to be held in the borough of Brooklyn in the year nineteen hundred and one, there shall be elected in each congressional district, as then constituted in said borough, one city magistrate, and in the territory constituting the borough of Brooklyn there shall be elected two city magistrates at large, and the terms of office of all said city magistrates so elected shall commence on the first day of January nineteen hundred and two and continue for six years thereafter." In the boroughs of Manhattan and the Bronx the city magistrates were to be appointed by the mayor as before. Under this provision city magistrates were elected in the borough of Brooklyn at large and by congressional districts as therein provided. This contest, as above stated, is between the defendants who claim to have been thus elected and the four answering defendants who claim to hold said office by appointment.

The constitutional provision which the said appointed magistrates invoke in support of their claim that the amendment of the charter in 1901 is unconstitutional, is the last clause of section 17 of article 6, which reads as follows: "The electors of the several towns shall, at their annual town meetings, or at such other time and in such manner as the legislature may direct, elect justices of the peace, whose term of office shall be

four years. In case of an election to fill a vacancy occurring before the expiration of a full term, they shall hold for the residue of the unexpired term. Their number and classification may be regulated by law. Justices of the peace and judges or justices of inferior courts not of record, and their clerks, may be removed for cause, after due notice and an opportunity of being heard, by such courts as are or may be prescribed by law. Justices of the peace and district court justices may be elected in the different cities of this State in such manner, and with such powers, and for such terms, respectively, as are or shall be prescribed by law; *all other judicial officers in cities, whose election or appointment is not otherwise provided for in this article, shall be chosen by the electors of such cities, or appointed by some local authorities thereof.*"

Assuming that this section of the Constitution applies to the case at bar, we see no escape from the conclusion that the charter amendment of 1901 is unconstitutional. The mandate of the Constitution is that judicial officers in cities, whose election or appointment is not otherwise provided for, shall be chosen *by the electors of such cities or appointed by some local authorities thereof.* This language is plain and unequivocal. It presents two distinct alternatives. Either may be chosen. It must be one or the other. If the office is to be filled by appointment, the agency by which that is to be accomplished is broadly, yet clearly designated. If the officer is to be elected, the power of appointment is as plainly excluded. If this is not the fair and reasonable construction of this provision of the Constitution then it is within the power of the legislature to authorize the employment of both methods at the same time, in the same territorial or civil division, or in different divisions, either to suit the caprice of a day or the exigencies of a political condition. If judicial officers of the same grade, performing the same duties in the same local division, may be appointed in part and elected in part at the same time, we shall not have long to wait for such use of the power as will serve the selfish ends of the design-

6

ing few at the expense of the public weal. If magistrates
may at the same time be appointed in the boroughs of Man-
hattan and elected in the borough of Brooklyn, why may they
not be elected in one part of a borough and appointed in
another? And if this may be done what becomes of the
system by which two boards of magistrates are created in the
two divisions of the Greater New York, designed to promote
unity and cohesion in the administration of criminal justice in
the city at large?

Under the charter of 1897 there was uniformity of tenure,
jurisdiction and method of selection. Under the charter of
1901 the same officers are to be selected by different methods
for terms of different duration, and if this is valid they may
also be invested with different jurisdiction. Under the original
plan each elector who exercised his right of franchise had an
equal part in the selection of all the magistrates, through his
vote for the mayor who appointed them. In the present
situation the electors of the borough of Brooklyn have the
right, in common with the electors of the borough of Man-
hattan, to vote for the mayor who appoints the magistrates
in the first division; and also to vote, both by districts and at
large, for the magistrates in their own borough, although that
right is denied to the electors of the first division. There has
been no exercise of the discretion vested in the legislature by
section 17, article 6 of the Constitution. In the creation and
continuance of this court two methods have been combined so
that neither has been distinctly adhered to, notwithstanding
the imperative constitutional command that one or the other
not both, shall be followed. In *Matter of Gage* (141 N. Y.
117), Judge FINCH, speaking of article 10, section 2, of the
Constitution, which provides that certain officers " shall be
elected by the people *or* appointed as the legislature may
direct," says, " that is, in such cases it may choose between
election and appointment, and in the latter event may dictate
the authority and mode of appointment." In *People ex rel.
Goring* v. *President, etc., of Wappingers' Falls* (83 Hun,
135), section 104 of the Election Law was construed. In

speaking of the character of the office in controversy, Judge CULLEN said : " The office here in dispute is a local office. By the Constitution it must be filled by election *or* appointment as the legislature shall direct,   *   *   *   and it is only *one* of these two methods that the legislature can adopt."

Does section 17 of article 6 of the Constitution apply to this case ?   The single question thus far discussed is, whether the charter amendment of 1901 violates that feature of said article and section of the Constitution which requires the legislature to adopt one or the other of the two alternatives therein set forth in the method of selecting " judicial officers in cities whose election or appointment is not otherwise provided for."   Upon that question the constitutional provision above referred to seems to be clearly applicable.   But, even if it were not, the case would be governed by the similar provisions of section 18, article 6, or section 2, article 10, of the Constitution, the first of which declares, " Except as herein otherwise provided, all judicial officers shall be elected *or* appointed at such times and in such manner as the legislature may direct," and the second of which provides that " All city, town or village officers whose election *or* appointment is not provided for by this Constitution shall be elected by the electors of such cities   *   *   *   *or* appointed by such authorities thereof as the legislature shall designate for that purpose."

Thus we see that in one respect at least all the constitutional provisions which, by any possibility, can apply to the charter amendment of 1901, are in accord as to the method of selecting public officers, whose election or appointment is not otherwise provided for.   They must be elected *or* appointed. The same office cannot be elective and appointive at the same time and place.   This is equally true whether certain provisions of the Constitution are regarded as purely retrospective and contemporaneous or prospective as well ; for, as we have seen, every provision of the Constitution upon this subject, whether dealing with the past, present or future, makes it clear beyond dispute that election *or* appointment are alternatives and not coincidents.   In this view of the case it is unnec-

essary to discuss the questions whether the office of city magis-
trate in the Greater New York is an old office with a new
name, or a new office; whether the provisions of section 17,
article 6 of the Constitution are retrospective and those of sec.
tion 18 are prospective; whether, in case such magistrates are to
be elected, the franchise must be given to all the electors in the
city at large under said section 17, article 6, or may be divided
into districts in such manner as the legislature may direct under
said section 18. Having arrived at the conclusion that the
charter amendment of 1901 is unconstitutional, in so far as
it provides for the appointment of city magistrates in the
first division and for their election in the second division, we
might well refrain from discussing all other questions that
may become purely academic in the course of events that must
follow this decision; but since some of our brethren think
we ought to decide the question whether it was constitutional
to elect magistrates by districts, we may add that we fully
concur in the opinion of Judge CULLEN upon that question.

One other consideration remains to be noticed. The char-
ter amendment of 1901 not only provided that city magistrates
in Brooklyn should be elected instead of being appointed, but
it also assumed to extend the terms of four city magistrates in
office when it took effect. The terms of these officers expired
on the last day of April, 1901, but the amendment purported to
extend their terms until January 1st, 1902. (Sec. 1392.) This
provision was held to be unconstitutional in a decision which
seems to have been acquiesced in by all concerned. (*Matter
of Kelly* v. *Van Wyck*, 35 Misc. Rep. 210.) Upon a writ of
mandamus commanding the mayor to appoint successors to the
four magistrates whose terms expired on April 30th, 1901, the
four respondents herein were appointed. The certificate in
each case recited the appointment to be "for the unexpired
portion of the term which commenced May 1st, 1901, and
which ends December 31st, 1901." The limitation of time
expressed in these certificates was undoubtedly based upon
the erroneous assumption that the charter amendment of 1901
(Sec. 1392) was valid. Under the law of 1895 as amended

in 1897, which was the law in force when the invalid amend-
ment of 1901 was enacted, the term of the office of city
magistrate is ten years.   No valid appointment can be made
for any other term except in case of a vacancy occurring
otherwise than by expiration of a term, in which event the
person appointed to fill the same shall be appointed for the
unexpired residue of the term.   It is, therefore, obvious that
the appointments of the answering defendants are either
absolutely void, or the attempted limitation of the term set
forth in their certificates is a nullity which may be treated as
mere surplusage.   We take the latter view.   The only actual
power which the mayor had in the premises was to make
appointments for terms of ten years.   It was his purpose
to make such appointments as he supposed he had the right
to make.   He followed the letter of the statute as he thought
it to be.   The limitation inserted in the certificates was
not based upon a design to make a temporary appointment
which, if not authorized would be wholly void, but upon a
misapprehension as to which of two statutes, the one void and
the other valid, should be followed in making the appoint-
ments.   Under these circumstances, the case does not fall
within the rule laid down in *People ex rel. Bridgeman* v.
*Hall* (104 N. Y. 177) where the mayor of Troy attempted to
make a temporary appointment to the office of chamberlain in
the place of the regular incumbent, who was then stated to be
absent from the city and supposed to be a defaulter.   In that
case the mayor had two powers.   The one, in case of a vacancy
in the office of chamberlain, to nominate for a full term ; the
other, during the absence of the incumbent, to make a tempo-
rary appointment.   He attempted to exercise the latter when
he should have exercised the former.   The error was induced,
in part at least, by a mistake as to the existence of extrinsic
facts which had a controlling effect upon the validity of the
appointment.   Upon the facts of the case this court held the
temporary appointment void and that it did not inure as an
appointment for the full term.   But the court was careful to
distinguish the case from *People ex rel. Andrews* v. *Lord*

(9 Mich. 227) and *Stadler* v. *City of Detroit* (13 id. 346), and said : " There the appointing power attempted to exercise a power of appointment clearly defined, but by inadvertence or misapprehension, put a limitation upon the appointment which was unauthorized."

A glance at the cases above cited will suffice to show that they cover the question here involved. In the *Lord* case the governor of Michigan made an appointment to fill a vacancy in the office of probate judge created by the death of the incumbent who had been re-elected, but died before the commencement of his new term. On the succeeding first of January, when said new term was to commence, the governor made another appointment upon the supposition that there was a new vacancy. The Constitution provided that in case of a vacancy the governor is to appoint a person to continue " until a successor is elected and qualified." Under that provision it was held that the second appointment was void and that the first was good " until a successor is elected and qualified." In the *Stadler* case the term of office of the marshal for the city of Detroit as fixed by charter was two years. Stadler was appointed for a year and gave a bond covering that period. At the expiration of the year he was removed, not in terms, but by the attempted appointment of a successor. The court held that Stadler's appointment was good for two years; that the recital in the bond, of one year, was surplusage, and that Stadler was entitled to the salary of the office. We think that the appointments of the answering defendants were valid for the full term of ten years and that the limitations attempted to be fixed thereto should be treated as surplusage.

For the foregoing reasons the order of the Appellate Division and the interlocutory judgment herein should be affirmed, with costs, and the question certified to this court should be answered in the affirmative.

CULLEN, J. While concurring in the opinion of Judge WERNER, I think the legislation in review before us conflicts

with the Constitution in another respect than that passed upon
by him, in that the statute of 1901 (Chap. 466) provides for
the election of city magistrates in the borough of Brooklyn
by congressional districts, while section 17, article 6 of the
Constitution requires that all judicial officers in cities, other
than justices of the peace and district judges, shall be elected
by the electors of the city or appointed by some local authori-
ties thereof. A perusal of this section shows a marked
change in the phraseology used with reference to three classes
of officers. *First:* "The electors of the several towns shall"
elect justices of the peace. *Second:* Justices of the peace
and district court justices "may be elected  *  *  *  in
such manner  *  *  *  as are or shall be prescribed by
law." *Third:* Other judicial officers in cities "shall be chosen
by the electors of such cities, or appointed by some local
authorities thereof." There is no provision in terms as to
who shall elect justices of the peace and district court justices
in cities, while it is expressly directed that justices of the peace
shall be elected by the electors of the town, and judicial offi-
cers in cities other than justices of the peace and district court
justices shall be elected by the electors of the cities in case the
offices are filled by election. "The electors" of the state or
of any of its political divisions means all the electors. The
Constitution provides that the members of this court shall be
chosen by the "electors of the state," justices of the Supreme
Court by the "electors of the several existing judicial dis-
tricts" and county judges and surrogates by "the electors of
their respective counties." No one would seriously assert
that the legislature could authorize judges of the Court of
Appeals to be chosen by districts, justices of the Supreme
Court by counties in the judicial districts, or county judges
and surrogates by towns. In fact, even if the Constitu-
tion had failed to prescribe in terms that the officers named
should be elected by the electors of the state, judicial dis-
trict or county (it does not so prescribe as to the governor
and the lieutenant-governor), I should be much inclined
to the belief that the principle underlies our form of gov-

ernment that all public officers must be elected by constituencies coextensive with their jurisdiction, unless express provision is made to the contrary, as in the instance of justices of the Supreme Court. The case of a legislative body or board of a municipality whose members are chosen by districts is no exception to the rule, for it is only in their aggregate character that such members constitute a municipal authority. (*Rathbone* v. *Wirth,* 150 N. Y. 459.) The Constitution itself recognizes this principle, for when it transferred judges of the various Superior City Courts to the Supreme Court it prescribed that they should hold court only in the counties by the electors of which they had been originally chosen to office.

But we are not without authority on the interpretation of this very section of the Constitution. In *Brandon* v. *Avery* (22 N. Y. 469) the validity of a statute authorizing the election of a police justice in the town of Ilion, who " in said village" should possess all the jurisdiction, power and authority of a justice of the peace of the town of German Flats, was challenged. The statute was upheld on the ground that it was intended to confine the jurisdiction and power of the justice exclusively to the limits of the village. Judge Comstock there said : ". It is urged that the charter of the village of Ilion attempts to create an additional justice of the peace for the town of German Flats, to be chosen by only a portion of the electors of that town. If this were true, the statute would, doubtless, be unconstitutional. (Const. art. VI, § 17.)" In *Waters* v. *Langdon* (40 Barb. 408) the statute provided that a police justice elected in the village of Whitesboro should have the same power and jurisdiction as justices of the peace in the town of Whitestown without the qualification " in said village" found in the *Brandon* case. It was held that the effect of this statute was to authorize a part of the electors of the town of Whitestown to choose an additional justice of the peace of such town, and that, therefore, it was unconstitutional and void. This case is cited with approval in *Geraty* v. *Reid* (78 N. Y. 64). If " the electors" of a

town means all the electors of the town, it is difficult to see why the term " the electors " of a city does not mean exactly the same thing.

I do not say that police justices might not legally be chosen by districts in a city. The Constitution authorizes justices of the peace and district court justices in cities to be elected in such manner as may be prescribed by law. At the time of the enactment of this constitutional provision (1869) these officers, in the then cities of New York and Brooklyn, were elected by districts. Their courts were local in their character. They were held in the districts, and in many respects their jurisdiction was confined to such districts. In what district it was necessary to bring a suit depended in some measure, at least, on the residence of the parties with reference to the district. My recollection is that the jurisdiction of the district courts in the city of New York was exclusively civil, but not so with justices of the peace in Brooklyn, who could and did act as criminal magistrates. The Constitution does not prescribe what the jurisdiction of these justices must be. I think that the legislature might create in cities district criminal courts as well as district civil courts, with justices to be elected by the electors of the districts. But in such case the courts must be really district courts ; that is to say, courts held for the districts, and the jurisdiction of whose magistrates is in some way limited to, or at least connected with, the districts, of which there is not a trace in the present case. If this view be correct, we are not troubled with any fear that our decision may obliterate the City Court of New York. The judges of that court are elected by the voters of the old city of New York, the present borough of Manhattan. But the jurisdiction of the court is confined to that borough, and the election of its judges in the present manner can well be upheld on the ground that it is a district court within the Constitution.

BARTLETT and HAIGHT, JJ. (dissenting). We are unable to agree with the prevailing opinion which pronounces unconsti-

tutional section 1392 of the charter of Greater New York as amended in 1901 (Chap. 366 of the Laws of 1901) on the ground that it is in violation of article six, section seventeen, of the Constitution.

We are of opinion that the legislature, in amending this section of the charter, derived its power from article six, section eighteen, of the Constitution, which reads: " Inferior local courts of civil and criminal jurisdiction may be established by the legislature, but no inferior local court hereafter created shall be a court of record. The legislature shall not hereafter confer upon any inferior local court of its creation, any equity jurisdiction or any greater jurisdiction in other respects than is conferred upon county courts by or under this article. Except as herein otherwise provided, all judicial officers shall be elected or appointed *at such times and in such manner as the legislature may direct.*"

This section of the Constitution contemplates and authorizes, among other things, the establishment by the legislature of courts possessing criminal jurisdiction.

The material portions of section seventeen read as follows : " Justices of the peace and district court justices may be elected in the different cities of this state in such manner, and with such powers, and for such terms, respectively, as are or shall be prescribed by law ; all other judicial officers in cities, whose election or appointment is not otherwise provided for in this article, *shall be chosen by the electors of such cities, or appointed by some local authorities thereof.*"

If, as is contended, the closing language of the section just quoted covers the establishment by the legislature of inferior local courts of criminal jurisdiction, it is impossible to give force or effect to section eighteen. If it was the intention of the framers of the Constitution to cover by section seventeen the establishment of inferior local courts of civil and criminal jurisdiction, section eighteen is surplusage.

The reading of these two sections together makes it apparent that the framers of the Constitution were dealing in section seventeen, so far as cities are concerned, with courts of

civil jurisdiction only.    In construing these sections, we refer
to the proceedings of the constitutional convention of 1868, in
which sections seventeen and eighteen were amended and, as
amended, have been incorporated in the Constitution of 1894,
with a slight amendment not affecting any question herein
involved.

Section seventeen as it existed under the Constitution of
1846 provided that "The electors of the several towns shall
at their annual town meeting, and in such manner as the
legislature may direct, elect justices of the peace, whose terms
of office shall be four years." The other provisions of this
section related to the filling of vacancies and the removal of
justices.

Section eighteen provided that "All judicial officers of
cities and villages, and such other judicial officers as may be
created herein by law shall be elected at such times and in
such manner as the legislature may direct."

It will be observed that section seventeen related to the
election of justices in towns, while section eighteen related
to judicial officers in cities and villages.

Under the amendment of 1868, section eighteen was made
general, applying to all of the state, and was no longer limited
to cities and villages, but provided that inferior local courts
of civil and criminal jurisdiction may be established by the
legislature, and except as herein otherwise provided for, shall
be elected or appointed at such times and in such manner as
the legislature may direct.

Section seventeen was then amended so as to extend to
cities as·well as towns by inserting the provision to which we
have already referred.

It appears from the proceedings of the convention in 1868
that section seventeen had been amended so as to provide that
"Justices of the peace and *police justices* shall be elected
in the different cities of this state in such manner, and with
such powers, and for such terms, respectively, as shall be pre-
scribed by law." (Journal, p. 1093; Debates, p. 3732.)

Subsequently, Mr. Murphy moved to reconsider the vote

by which the article on judiciary was adopted, for the purpose
of enabling him to move the substitute, as follows : ." Justices
of the peace and district court justices shall be elected in
the different cities of this state in such manner and with such
powers and for such terms respectively as shall be prescribed
by law ; all other judicial officers in cities, whose election or
appointment is not otherwise provided for in this article, shall
be elected or appointed by some local authorities of such cities
respectively." This amendment was carried. (Journal, pp.
1164, 1165.)

In the debates upon this amendment Mr. Murphy said : " It
will be recollected that I proposed an amendment which was
adopted, to this section, providing that justices of the peace
and police justices shall be elected in the different cities of
this state in such manner and with such powers and for such
terms respectively as shall be prescribed by law. When I
drew that amendment I supposed that justices of the district
courts in the city of New York were really justices of the
peace and were included within that denomination as expressed
in the amendment ; but it appears they are considered other-
wise. I wish to amend that amendment by inserting after the
words ' justices of the peace ' the words ' and district court
justices.' I have submitted my amendment to the gentlemen
interested in this question in the city of New York, and I
believe all others who have taken any particular interest in
this question and with their assent I have modified the orig-
inal amendment so as to read as follows."

Mr. Verplank then stated : " I desire to know, as the sec-
tion now stands, what becomes of police justices ? " And,
further, " I would like to ask the gentleman from Kings (Mr.
Murphy) why he moves to strike out the election of police
justices by the people of the cities where they reside ? " To
which Mr. Murphy answered, " In order to save the district
court justices in the city of New York, *which are entirely of
civil jurisdiction.*"

Then Mr. Verplank further stated : " The police justices of
the city of Buffalo have been elected for a great many years,

and there never has been any complaint on the subject, and I know no reason why the election of these officers should be changed and made subject to appointment by the legislature." To this Mr. Murphy replied : " It does not follow that it shall be." Mr. Comstock answered : "It will be left just where it is."

It is thus apparent that section seventeen was framed for the purpose of providing for the election of justices of the peace in towns, and also for district court judges or justices and other judicial officers in cities whose jurisdiction was limited to civil cases, leaving the organization of criminal courts to the provisions of section eighteen.

This is rendered clear beyond dispute from the proceedings of the convention just quoted, in which the provision for electing police justices was stricken out of section seventeen. It is true section eighteen also provides for inferior local courts of civil jurisdiction as well as criminal, but this section having been made general so as to apply to the whole state, as well as to cities, inferior local courts may be established in villages or towns. It also covered existing conditions in other cities where courts had been established having both civil and criminal jurisdiction. By the provisions of this section judicial officers shall be elected or appointed at such times and in such manner as the legislature may direct. Here we have no limitation upon the power of the legislature. It may divide cities into districts and provide for the election of justices in such districts by the electors thereof, or may provide for their election by the municipality at large, or by appointment.

The concluding provision of section seventeen, to the effect that all other judicial officers in cities whose election or appointment is not otherwise provided for in this article, shall be chosen by the electors of such cities or appointed by some local authorities thereof, was evidently inserted to meet existing conditions in the city of New York and other cities of the state in which Superior City Courts and courts of Common Pleas were in existence, having civil jurisdiction only. This provision was not intended to apply to courts

having criminal jurisdiction only, as it would be in conflict with section eighteen, which provides that the judicial officers of such courts shall be elected or appointed at such times and in such manner as the legislature may direct.

This construction is in accord with the case of *Curtin* v. *Barton* (139 N. Y. 505), which involved the constitutionality of chapter 342 of the Laws of 1892, establishing in the city of Syracuse a court called " The Municipal Court of the City of Syracuse." The contention was that this act was unconstitutional. It is unnecessary to consider the various provisions of the act in question. It is enough for our present purpose to call attention to the fact that the third section provides for the election of judges at the annual charter election to be held in the city next preceding the close of the term of the governor's appointees and thereafter as the term which was fixed at six years should expire. The next section provides for vacancies, and in the several sections following the powers and duties of the judges, and the several subjects to which the jurisdiction of the court was to extend, are specified and enumerated.

Judge O'BRIEN, writing the opinion of the court, said (at page 509) : " None of these provisions are material to the question involved in the appeal except the twelfth section, which provides that ' The said court shall have the same jurisdiction over the persons of defendants as is now possessed by justices' courts of towns, pursuant to the provisions of section 2869 of the Code of Civil Procedure, and for the purpose of conferring jurisdiction of the person the said city of Syracuse shall be deemed a town and the said court a justice's court thereof.' The most serious objection to this act grows out of the provision authorizing the governor to appoint the first judges. The court was so organized when the judgment under review was given, and it is claimed that the legislature had no power to appoint or provide for the appointment of the judges. The solution of the question depends upon the construction to be given to section nineteen and the last clause of section eighteen, article six, of the Constitution."

It should be observed that this opinion was written before the adoption of the Constitution of 1894, and section eighteen referred to in Judge O'BRIEN's opinion is present section seventeen and section nineteen is present section eighteen of article six of the Constitution.

Judge O'BRIEN continues: "If the words 'all other judicial officers in cities,' contained in the last clause of section eighteen (17), are applicable only to officers and courts existing when the Constitution went into effect, and if it can be held that this court could have been legally constituted and the judges clothed with their official character under section nineteen (18), then the legislature clearly had the power to provide for the appointment of the judges by the governor and senate. It may be difficult to construe these provisions in such a way as to give both full effect and in a manner as would exclude any doubt that the intention of the framers of the Constitution had been ascertained and enforced. There is no doubt, however, in regard to the power of the legislature to establish an inferior local court of civil and criminal jurisdiction in a city under section nineteen (18). The only question here being as to the power to appoint the judges or confer this power on the governor. We do not deem it necessary to decide that question in this case."

The precise point, to which we call attention, is that it was held that there was no doubt in regard to the power of the legislature to establish an inferior local court of civil and criminal jurisdiction in a city under section nineteen (18), the only question for decision being the power to appoint judges and to confer that power upon the governor. This latter question was not decided.

It seems to have been taken for granted that present section seventeen of the Constitution related to existing courts, and that the Municipal Court of the city of Syracuse was organized under present section eighteen.

It is contended that all of the magistrates of criminal courts in a city must be either appointed or elected; that the legislature cannot provide for the election of a part and the

appointment of the others. We find no authority for this contention in the Constitution. On the other hand, it is in direct conflict with the provision of section eighteen, that judicial officers may be elected or appointed at such times and in such manner as the legislature may direct. The legislature in its wisdom may provide for both elective and appointive magistrates, as the exigencies of the case may demand. This power has frequently been exercised by the legislature in the selecting of non-partisan boards in cities, as for instance, in the city of Buffalo. Its revised charter of 1891 provides for a board of public works to consist of three members, who shall hold their offices for three years, one of whom shall be elected by the people and the other two appointed by the mayor, but the commissioners so appointed were not to be adherents of the same political party. The evident intention of the legislature was that some skilled and experienced engineer should be kept upon the board, which could be better accomplished by the appointing power than by resorting to an election in which any person may be a candidate. The commissioners of public works are city officers and they must be elected or appointed pursuant to the provisions of section two of article ten of the Constitution, the provisions of which are substantially the same as the concluding provisions of section seventeen of article six. We see no objection to non-partisan legislation of this character. In many respects it is more commendable than much of the legislation that is designed for partisan purposes; consequently we are of the opinion that the Constitution does not deprive the legislature of the power to provide for the election of certain city officers and the appointment of others.

It is argued that this construction would tend to deprive electors of their constitutional rights by permitting officers elected in a certain district to exercise their functions in another locality or portion of a city. We are of opinion that no such result follows. In the Constitutions of 1846, 1868 and 1894 it is provided that justices of the Supreme Court elected in a certain district could exercise their functions in any

county of the state. We have here the recognition, by the framers of the Constitution, of the principle that an officer may be elected in one locality and exercise his functions in another.

A constitution is not supposed to deal with details, but general principles, and it is a familiar rule of construction that where the letter of the Constitution is in conflict with the intention of its framers, the latter will prevail.

It is clear that the framers of the Constitution contemplated situations which might arise in the future. when the legislature should be free to provide for appointment or election in districts or cities at large, as might seem proper. The situation that confronted the legislature when amending the charter of the city of New York in 1901 well illustrates the wisdom of the framers of the Constitution in this respect. The city of New York, containing three millions and a half of inhabitants, is made up of the entire counties of New York, Kings, Richmond and Queens and a portion of the county of Westchester. The boroughs of Manhattan and the Bronx constitute the first division and the remaining territory the second division of the greater city. In dealing with the election of magistrates the legislature saw fit to provide that they should be appointed by the mayor of the city in the first division and elected by districts in the second division, with details to which reference need not now be made.

The situation presented in this enormous center of population is not to be regulated by the policy that might prevail in a country village or town or a city of insignificant population. It cannot be properly said that the qualified electors in the boroughs of Manhattan and the Bronx are deprived of their constitutional rights by allowing the duly elected mayor to appoint magistrates in that division of the city. The mayor is placed in power by the electors and represents them in the act of appointment. On the other hand, there were many cogent reasons that rendered an election of magistrates in the borough of Brooklyn, and ultimately in the other territory contained in the second division, desirable and proper.

One other point should be alluded to. Section 1392 of the

city charter, as amended in 1901, provided as follows : " The
City Magistrates in office in the second division on the first
day of January, 1901, who were police justices in the former
city of Brooklyn in office on the thirty-first day of January,
1898, shall hold their office until their successors are elected
at the general election to be held in the year 1901, but all
city magistrates in the borough of Brooklyn, appointed after
January thirty-first, 1899, who were in office on January first,
1901, shall hold office until their successors are elected at the
general election to be held in the year 1907."

The mayor having been advised that this extension of time
was unconstitutional, appointed under compulsion of man-
damus in June, 1901, six persons to the office of city magis-
trate, in the borough of Brooklyn, to fill the vacancies caused
by the expiration of the original terms of office of the former
police justices of Brooklyn on April 30th, 1901.

In the certificates of appointment, in obedience to the writ
of mandamus, and in view of the situation, the terms of office
of such new appointees were designated as expiring on Decem-
ber 31st, 1901.

It is now claimed that the mayor, in making these appoint-
ments, was exercising his power under section 1392 as it stood
prior to the amendment of 1901, and that the legal effect of
his action was to vest in each of the appointees a term of ten
years.

While we are of opinion that the extension of time con-
tained in the amended section was constitutional, nevertheless,
if the contrary is assumed, it is impossible, in view of the
surrounding facts, to legally hold that the mayor was exercis-
ing his general powers of appointment.   He was compelled
to his action by the writ of mandamus, and his certificates
disclose upon their face the precise nature of the power that
he exercised under the command of the court.

The cases cited to sustain the contrary view have no applica-
tion to this situation, and if the statutory extension of time
is to be deemed unconstitutional the appointments were
absolutely void.

We have to say in conclusion that it seems to us a most unfortunate and unnecessary result that persons who have been neither elected nor appointed to the office of city magistrate, should be declared entitled to this responsible position for a term of ten years by the judgment of this court.

The order appealed from should be reversed.

PARKER, Ch. J., GRAY and O'BRIEN, JJ., concur with WERNER and CULLEN, JJ.; BARTLETT and HAIGHT, JJ., dissent.

Ordered accordingly.