(122 App. Div. 477.)

## BRENNAN v. CITY OF NEW YORK.

(Supreme Court, Appellate Division, Second Department.   November 29, 1907.)

STATUTES—PARTIAL INVALIDITY—EFFECT.

The unconstitutionality of Laws 1901, p. 595, c. 466, amending the original Greater New York charter in so far as it authorized the election of city magistrates in the borough of Brooklyn and provided for the appointment of police clerks, did not invalidate so much of section 1396a as fixed the salary of such clerks in the First division and in the borough of Brooklyn at $2,500, and in the boroughs of Queens and Richmond at $2,000; such provision being entirely separable from the invalid portions.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 44, Statutes, §§ 58–66.]

Appeal from Municipal Court of New York.

Action by Michael Brennan against the city of New York.   From a Municipal Court judgment in favor of plaintiff, defendant appeals. Reversed.·

Argued before WOODWARD, JENKS, HOOKER, GAYNOR, and RICH, JJ.

Thomas F. Noonan (Theodore Connoly, on the brief), for appellant. Wm. Allaire Shortt, for respondent.

GAYNOR, J.·  The first charter of the new city of New York (passed in 1897) divided the city into two divisions for magistrates' courts, the first comprising the boroughs of Manhattan and the Bronx and the second the remaining three boroughs of Brooklyn, Queens and Richmond.  Laws 1897, p. 495, c. 378, § 1390 et seq.  It provided for the appointment of the magistrates by the mayor, and for the appointment of police clerks in each division (i. e., clerks of the magistrates' courts) with a salary of $2,500 a year by the magistrates of that division as a board.  Sections 1391, 1400.

In 1901 the charter was revised throughout by a new act embracing every provision of the old that was continued, and complete in itself. It left the appointment of magistrates and police clerks in the first division unchanged, but provided for the election of the magistrates of the second division, and that each magistrate there should appoint one police clerk to succeed the old police clerks, enacting of the latter that "their different positions be deemed abolished."  Laws 1901, p. 593, c. 466, § 1394.  The same section which provided for such appointment of police clerks by each magistrate then provided as follows (section 1396a):

"The salary of each police clerk in the first division and in the borough of Brooklyn, shall be twenty-five hundred dollars per annum, payable monthly, and the salary of each assistant clerk in the borough of Brooklyn shall not exceed two thousand dollars per annum, and in the boroughs of Queens and Richmond said clerks' salaries shall be two thousand dollars per year, payable monthly."

The courts declared this scheme of election of magistrates in the Second district unconstitutional (People v. Dooley, 171 N. Y. 74, 63 N. E. 815), and the provision abolishing the position of the old police clerks and providing for the appointment of successors by each magistrate was necessarily carried down with it, for it was entangled with

it, and could not be disconnected from it, as we afterwards held in an application for a writ of mandamus to compel a magistrate to appoint a police clerk, instead of such clerks being appointed by the board of magistrates. Matter of the Application of Bux, 113 App. Div. 920, 100 N. Y. Supp. 1108.

But the provision fixing the salaries of police clerks is not so connected. It is not entwined with the intention of the scheme for the election of magistrates and the appointment of police clerks·by the elected magistrates; it is neither warp nor woof of it, but is entirely separate therefrom, and can be carried out without any reference to it. It is not confined to the Second division, as the said scheme was, but prescribes the salaries for police clerks throughout the entire city, in the First division as well as in the Second where the mischief of the unconstitutional legislation arose. It scales such salaries, making them lower in the boroughs of Queens and Richmond than in the two boroughs of the First division and the borough of Brooklyn. It manifests a general intention in respect of such salaries throughout the city independent of the said unconstitutional provisions which were local to a part of the city. This will appear all the plainer when we also keep in mind that the said charter act of 1901 was a general revision of the first charter, complete in itself, and had to provide somewhere for the salaries of police clerks and did so only by the said provision. That such provision is in the same section which provides for the appointment of the police clerks by the magistrates acting singly does not matter. Its independence and separability in the legislative intention are just as manifest there as though it were a separate section. And we cannot say that the Legislature would not have passed it if it had not passed the unconstitutional provisions, which is a test. Indeed, the contrary is manifest, i. e., that the revisers and legislators had the distinct and independent purpose of establishing these salaries throughout the city, and would have done so anyhow for they had to. Cooley's Const. Lim. (7th Ed.) p. 246; People ex rel. Fowler v. Bull, 46 N. Y. 57, 7 Am. Rep. 302; People ex rel. City of Rochester v. Briggs, 50 N. Y. 553; People ex rel. Ryan v. Green, 58 N. Y. 295; Matter of Village of Middletown, 82 N. Y. 196; People ex rel. v. Kenney, 96 N. Y. 294; Duryee v. Mayor, 96 N. Y. 477; Skaneateles W. W. Co. v. Village of Skaneateles, 161 N. Y. 154, 55 N. E. 562, 46 L. R. A. 687. No statute or part of a statute may be declared unconstitutional by the courts if there be any reasonable theory on which it can stand.

The judgment should be reversed.

Judgment of the Municipal Court reversed, and new trial ordered; costs to abide the event. All concur.