HARRY J. BAREHAM, Appellant, *v.* CITY OF ROCHESTER et al., Respondents.

Constitutional law — Home Rule — municipal corporations — Rochester (city of) — validity of local law providing for nomination and election of councilmen and appointment of city manager — no conflict with section 2 of article 10 of Constitution — local law in harmony with section 1 of article 12 — no incompatibility between local law and section 1 of article 3 — prohibition of section 18 of article 3 not violated — Election Law not a statute applicable alike to all cities of State — municipality empowered under Home Rule Law to modify Election Law affecting election of local officers — local law invalid in so far as it supersedes Election Law without clearly specifying section, subsection or subdivision sought to be repealed — local law relating to assessment and collection of city tax valid.

1. Sections 1 to 20 of a local law adopted by the city of Rochester, which provide for the nomination and election of councilmen, and section 90, which provides for the appointment of a city manager, do not conflict with the Constitution and there is no fatal inconsistency between them and any statute applicable alike to all the cities of the State.

2. There is no conflict with section 2 of article 10 of the Constitution which commands that all city officers whose election or appointment is not provided for by the Constitution itself shall be elected by the electors of such cities or appointed by such authorities thereof as the

Legislature shall designate for that purpose. Councilmen and city managers are not specified in the Constitution, but are clearly provided for in section 3 of article 12, which section allows every city to adopt local laws relating to the powers, duties, qualifications, number, mode of selection and removal, terms of office and compensation of all its officers.

3. Harmony also exists between the local law and section 1 of article 12 of the Constitution which requires the Legislature to provide for the organization of cities. By passage of the City Home Rule Law (L. 1924, ch. 363) the Legislature has provided for the organization of all cities by giving the local governing bodies the right to make changes in the structure and form of their present organizations.

4. The term " mode of selection " in section 3 of article 12 of the Constitution expresses an intent to allow a city to determine not only that it shall cause its officers either to be elected or appointed but connotes also that a municipality may define the precise method by which either an election or appointment shall be effected. This mode of selection does not result in any incompatibility between the local law and the provisions of section 1 of article 3 of the Constitution. The legislative power has been exerted in enacting the City Home Rule Law. The option which the Legislature by that act left open to cities has been accepted by Rochester. The Constitution and the Legislature say that the city may choose the mode of selection of its officers and the city has specified it.

5. Neither has the prohibition of section 18 of article 3 of the Constitution been violated. The Legislature has not passed any private or local bill for " the opening and conducting of elections or designating places of voting." It passed a general law, the City Home Rule Law, applicable to every city in the State, by which each city is allowed to legislate in respect to the mode of selection of its officers.

6. The Election Law (Cons. Laws, ch. 17) is not a statute applicable alike to all the cities of the State in respect to nominations and elections of city officers. Under the Home Rule Law a municipality is empowered to modify an election law in so far as that law affects the property, government or affairs of the municipality, *i. e.*, in so far as it affects the election of the local officers.

7. But the city is without authority to supersede the legislative act except in the way indicated. Subdivision 1 of section 12 of the City Home Rule Law, as amended (L. 1925, ch. 397), requires that the statute, section, subsection or subdivision sought to be superseded by a local law shall be clearly specified. The local law in suit is, therefore, invalid in so far as it supersedes the provisions of the Election Law without compliance with provisions of the City Home Rule Law prescribing the form and manner of repeal.

8. The provisions of the local law relating to the assessment and collection of the general city tax for the year 1928 are valid.

*Bareham* v. *City of Rochester*, 221 App. Div. 36, modified.

(Argued June 7, 1927; decided July 20, 1927.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the fourth judicial department, entered May 24, 1927, modifying and affirming as modified a judgment entered upon a decision of the court on trial at Special Term.

*Eugene J. Dwyer* for appellants. The provisions of the local law for the nomination and election of councilmen and appointment of a city manager are repugnant to article 10, section 2, article 12, section 1, article 3, section 18, and article 3, section 1, of the New York State Constitution. (*Matter of Brenner*, 170 N. Y. 185; *People* v. *Pelham*, 215 N. Y. 374.) All provisions of the local law in conflict with the Election Law are void. (*Lynn* v. *Nichols*, 122 Misc. Rep. 170; *People* v. *President of Wappingers Falls*, 83 Hun, 130; *Matter of Ahern* v. *Elder*, 195 N. Y. 493; *Matter of McCabe* v. *Voorhis*, 243 N. Y. 401; *Sturgis* v. *Spofford*, 45 N. Y. 446; *State Board* v. *Bellinger*, 138 App. Div. 12.)

*Clarence M. Platt, Corporation Counsel (Howard Lee McBain* and *Isaac Adler* of counsel), for respondents. The provisions of article I (§§ 1–20) of the local law, which provide a plan of so-called non-partisan nominations and elections for members of the city council, are not void because of conflict with the State Election Law. (*People ex rel. Krulish* v. *Fornes*, 175 N. Y. 114; *Vroman* v. *Fish*, 181 App. Div. 502.) The provisions of the Rochester local law relating to the nomination and election of councilmen are not in violation of article 3, section 18, of the Constitution, which prohibits the Legislature from passing " a private or local bill " providing for " the opening or conducting of elections." (*Matter of Ahern* v. *Elder*, 195 N. Y. 493; *Lynn* v. *Nichols,* 122 Misc. Rep.

170.)    The Rochester local law is not unconstitutional in that the provisions thereof relating to the election of councilmen and appointment of other city officers are in violation of article 10, section 2, of the Constitution. (*People ex rel. Carter* v. *Rice,* 135 N. Y. 473; *People ex rel. W. E. & C. Co.* v. *Metz,* 193 N. Y. 148; *People ex rel. McClelland* v. *Roberts,* 148 N. Y. 360; *Matter of Seeley* v. *Stevens,* 190 N. Y. 158.)    The City Home Rule Law is not in conflict with article 12, section 1, of the State Constitution. (*Bank of Chenango* v. *Brown,* 26 N. Y. 467; *Townsend* v. *City of New York,* 16 Hun, 362; 77 N. Y. 572; *Bank of Rome* v. *Village of Rome,* 18 N. Y. 38; *People* v. *Metz,* 193 N. Y. 148.)

O'BRIEN, J.    The common council of the city of Rochester, assuming to exercise the authority conferred upon all cities of the State by article 12, sections 2 and 7, inclusive, of the Constitution and by chapter 363, Laws of 1924, enacted a local law superseding many provisions of its charter and of other statutes and radically changing the form of its government.    Plaintiff, a taxpayer of that city, alleges that the whole local law is void and demands a declaratory judgment to that effect and an injunction to restrain the enforcement of the local law.    Such parts of the local law as were considered by the Appellate Division, with the exception of paragraph 2 of section 95, which attempts to disqualify for appointment all persons who within one year previous to appointment have held elective office, were declared valid.    Jurisdiction in an action for a declaratory judgment is discretionary (Civ. Pr. Act, § 473; Rules Civ. Pr. 211, 212).    Likewise in an action for an injunction.    We decline to exercise any broader jurisdiction at this time than was entertained by the courts below.    Two issues, requiring prompt decision, relate to the validity of those sections which deal with nominations and elections of the newly created municipal officers and with the assessment and collection of the

general city tax for the year 1928. Again, the Home Rule article of the Constitution and the City Home Rule Law (Cons. Laws, ch. 76) claim our interpretation. (See *Browne* v. *City of New York*, 241 N. Y. 96; *Matter of McCabe* v. *Voorhis*, 243 N. Y. 401; *Schieffelin* v. *Berry*, 243 N. Y. 603.)

Under the Rochester charter (Laws of 1907, chapter 755, as amended), some of the city officers were appointed by the mayor. Most of them were elected by the people. The local law provides by section 61 for the election by the electors of the city of five councilmen-at-large and for the election of four district councilmen by the electors of the four city districts. These nine officers are declared by section 60 to constitute the common council and, pursuant to section 90, they shall select and may suspend or remove the city manager who is therein described as the chief administrative officer of the city. His extremely broad powers are enumerated in sections 91, 93 and 94. Upon the council, as provided by sections 65, 66, 67 and 68, is also conferred the authority and imposed the duty of selecting the mayor, an officer vested with slender power, as well as the vice-mayor and city clerk. The basic structure of the new government, therefore, is the council and the city manager. It is the validity of the proposed manner of the selection of the occupants of these offices that we must first consider.

Are sections 1–20 of the local law, which provide for the nomination and election of councilmen, and section 90, which provides for the appointment of a city manager, inconsistent with the Constitution or with any statute applicable alike to all the cities of the State? Appellant argues that they do conflict with article 10, section 2, article 12, section 1, article 3, section 18, and article 3, section 1, of the Constitution and with the Election Law. We think that they do not conflict with the Constitution and that no fatal inconsistency exists between them and the Election Law.

Article 10, section 2, of the Constitution commands that all city officers whose election or appointment is not provided for by the Constitution itself shall be elected by the electors of such cities or appointed by such authorities thereof as the Legislature shall designate for that purpose. Councilmen and city managers are not specified in the Constitution, but specific mention or minute description is not the subject with which the Constitution is concerned. This part deals with city officers whose election or appointment is not " provided for " by it. Surely, councilmen and city managers, as well as innumerable other municipal officers concerning whom the Constitution is silent, are clearly provided for in article 12, section 3. This new section allows every city to adopt local laws relating to the powers, duties, qualifications, number, mode of selection and removal, terms of office and compensation of all its officers. If article 12, section 3, could be said to be inconsistent with article 10, section 2, it would have the effect, as a later enactment, to modify the earlier one. Those parts of the local law assailed as inconsistent with article 10, section 2, derive their authenticity from chapter 363, Laws of 1924, section 11, which, in turn, is valid in its relation to article 12, section 3. This section, as part of the Constitution, cannot be inconsistent with itself. The local law springs from the Home Rule statute and that statute descends from the Constitution. A different interpretation of the combined effect of article 10, section 2, and article 12, section 3, would tend toward an unreasonable result and would defeat the purpose of the Home Rule amendment.

Harmony exists also between the local law and article 12, section 1, of the Constitution. No discord can be discerned. This section casts a duty upon the Legislature to provide for the organization of cities. The Legislature has fulfilled that obligation. First, it enacted the charter

10

of the city of Rochester (Laws of 1907, chapter 755), and later by the passage of the City Home Rule Law (Laws of 1924, chapter 363) it provided further for a different organization of that city and of all other cities by giving the local governing body the right to make changes in the structure and form of the present organization. The local law under review does not provide for organization. It organizes. The Constitution by article 12, section 1, and the statute by chapter 363, Laws of 1924, have made the provision. The local law merely puts into operation an organization for which the Legislature has provided.

Article 3, section 1, and article 3, section 18, may be considered together and in relation to article 12, section 3. Article 12, section 3, of the Constitution, as we have recited, imparts authority to every city to adopt local laws, not inconsistent with the Constitution and laws of the State, relating to the powers, duties, qualifications, number, *mode of selection* and removal, terms of office and compensation of all officers and employees of the city. Section 11 of the City Home Rule Law (Laws of 1924, chapter 363) embraces the same grant of power. The term " mode of selection " expresses an intent to allow a city to determine not only that it shall cause its officers either to be elected or appointed but connotes also that a municipality may define the precise method by which either an election or appointment shall be effected. To hold that the expression restricts municipal action merely to a choice of election or appointment would, we think, place a narrower interpretation on that phrase than the Constitution and the statute intended. We find no contrary doctrine declared in *Sturgis* v. *Spofford* (45 N. Y. 446) nor in *People* v. *Dooley* (171 N. Y. 74), cases cited by appellant. The better view is that cities are empowered by the new constitutional provision not only to make this choice but are authorized to direct the manner by which their officers shall be enabled to assume their positions. According to the

direction of section 31, City Home Rule Law, we are impelled toward a liberal construction. The right to select and to define the manner of election or appointment is, however, limited by the requirement that the method must not be inconsistent with the Constitution or with statutes which are applicable to all cities and that it must not conflict with the procedure directed by the City Home Rule Law itself. This mode of selection, as the term is construed by us, does not result in any incompatibility between the local law and the provisions of article 3, section 1, and article 3, section 18, of the Constitution. The legislative power vested in the Senate and Assembly, as declared in article 3, section 1, has been exerted by those houses in enacting the City Home Rule Law. The option which the Legislature by that act left open to cities has been accepted by Rochester. The Constitution and the Legislature say that the city may choose the mode of selection of its officers and the city has specified it. The principle of the legislative authorization and of the municipal action does not differ from the doctrine of *Cleveland* v. *City of Watertown* (222 N. Y. 159). Here the authority is even broader because, under the Constitution as it existed at the time of the decision in the *Cleveland* case, any semblance of delegation of legislative power to make charters was prohibited; now, pursuant to article 12, sections 3 and 5, municipal influence has been perceptibly expanded. Section 5 sanctions the bestowal by the Legislature of rights more extensive than those specifically enumerated in section 3. Such additional rights have been conferred by sections 11, 20 and 36 of the City Home Rule Law. The wide powers to adopt charters granted by section 20 were theretofore unknown. Neither has the prohibition of article 3, section 18, of the Constitution been violated. The Legislature has not passed any private or local bill for " the opening and conducting of elections or designating places of voting." It passed a general law, the City

Home Rule Law, applicable to every city in the State, by which each city is allowed to legislate in respect to the mode of selection of its officers.

Appellant argues that, because much of the substance of the local law conflicts with the Election Law, the statute must prevail and the local law is void. This argument would be unanswerable if the Election Law were, in so far as it regulates the nomination and election of city officers, such a statute as in terms and in effect applies alike to all cities. Section 130 of the Election Law (Cons. Laws, ch. 17) excludes it from that class. This section limits its operation when it declares that " this article shall not repeal nor affect the provisions of a statute, general or local, prescribing a particular method of making nominations of candidates for certain school or city offices." The Legislature has enacted several local statutes, applicable only to certain cities, whereby nominations and elections of city officers are authorized or regulated in a manner different from the general scheme defined in the Election Law. That law, therefore, is not a statute applicable alike to all the cities of the State in respect to nominations and elections of city officers. Yet, it does apply to Rochester until it shall be superseded by the Common Council in the manner required by the City Home Rule Law. The local statutes existing by legislative action abolish the party primary, forbid the display of party emblems or devices and provide for the non-partisian election of city officers. (Laws of 1914, chapter 217, title IV, sections 70–99, Buffalo; Laws of 1915, chapter 170, section 18, Mechanicville; Laws of 1916, chapter 229, sections 100–105, Saratoga Springs; Laws of 1916, chapter 172, sections 202–206, Sherrill; Laws of 1921, chapter 678, section 18, Batavia; Laws of 1923, chapter 665, section 12-a, Jamestown.) In principle the local law of Rochester is apparently modelled upon them. The legislative construction of the Constitution respecting the validity of these various statutes, apparently

unattacked as they have been for several years, is entitled to great weight. (*People ex rel. Einsfeld* v. *Murray*, 149 N. Y. 367, 376; *People* v. *Schweinler Press*, 214 N. Y. 395; *Schieffelin* v. *Hylan*, 236 N. Y. 254, 264.) We cannot say that they are unconstitutional. On the contrary, we believe them to be valid. The municipality is empowered to modify an election law in so far as that law affects the property, government or affairs of the municipality, *i. e.*, in so far as it affects the election of the local officers. It cannot, of course, modify the Election Law in respect to other officers, for as to these the Election Law is not one that regulates the municipal government or affairs.

In one respect we think that the present form of the local law pertaining to nominations and elections cannot be approved. Section 12, subdivision 1, of the City Home Rule Law warns local legislatures of the penalty for failure to comply with its command. The warning is not perfectly clear and the command is somewhat faint and indirect. Nevertheless we think that the warning is visible and the command audible. Section 12 says that " any local law adopted pursuant to this chapter *may* specify any provision of an act of the Legislature by reference to chapter number, year of enactment, title of statute, section, subsection or subdivision, which provision relates to the subject matter of such local law and does not in terms and in effect apply alike to all cities, and which it is intended to supersede by such local law; and upon the taking effect of such local law, *such provision* of any such act of the Legislature *so specified* shall cease to have any force or effect in such city." By chapter 397, Laws of 1925, this subdivision was amended by adding: " Such a superseding local law may contain the text of such statute, section, subsection or subdivision and *may* indicate the changes to be effected in its application to such city by enclosing in brackets the matter to be eliminated therefrom and italicizing or underscoring new matter to be included therein." In *Matter of McCabe*

v. *Voorhis* (243 N. Y. 401, 414, 415) the court said: " If it is intended to supersede by a local law a provision of an act of the Legislature which does not in terms and in effect apply alike to all cities, such local law shall specify any provision of such act of the Legislature by chapter number, year of enactment, title of statute, section, subsection or subdivision which it is intended to supersede by a local law."

The section is permissive; *i. e.*, the change in the general law *may* be made by the local law in the way indicated. No other way is indicated. Hence the city is without authority to supersede the legislative act except in the way indicated. The existence of a duty to keep a local law free from ambiguity cannot be denied. Confusion would be intolerable if, in the case of every local law adopted throughout the cities of the State, no one could feel confident that local legislatures had intended to supersede an entire statute or only part of it. If a part, which part? The purpose of section 12, subdivision 1, of the City Home Rule Law- is to compel definiteness and explicitness in order that clarity shall result. Section 20 of the local law alludes to the Election Law, but not in such a way that one can perceive with reasonable certainty the particular sections of that law which it seeks to supersede. An earnest and attentive comparison of the Election Law with the Rochester charter and with the local law might result in knowledge respecting the sections of the Election Law intended to be superseded. On the other hand, we cannot be assured that such knowledge can be acquired except by resort to the courts and by the varying application of those intricate and sometimes conflicting rules which are said to elicit evidence of legislative intent. For this reason, the local law requires amendment by the inclusion of a clear declaration of intent to supersede such sections of the Election Law as the local law seeks to supersede. The right conferred upon cities by the new constitutional

provision and by the City Home Rule Law is an extraordinary one. We recognize that sections 30 and 31 of the City Home Rule Law require liberal construction respecting the provisions of the act. Such direction cannot dispense with the obligation of substantial adherence to the statutory procedure. There was no such adherence here.

Are the provisions of the local law relating to the assessment and collection of the general city tax for the year 1928 valid? They may be so construed and we agree generally with the reason assigned by the learned justice at Special Term. Section 188 of the charter has not been wholly superseded by section 180 of the local law. Reading together the surviving parts of the present charter and supplemental provisions of the local law, a sufficiently plain implication respecting the rights of taxpayers to a hearing prior to April 2, 1928, is present. The duty of the assessors to hear grievances can be compelled by the courts.

The judgment of the Appellate Division should be modified by declaring the local law to be invalid in so far as it supersedes the provisions of the Election Law without complying with the provisions of the City Home Rule Law prescribing the form and manner of repeal, and as modified affirmed, without costs to either party.

CARDOZO, Ch. J., POUND, CRANE, ANDREWS and KELLOGG, JJ., concur with O'BRIEN, J.; LEHMAN, J., concurs in the view that the provisions of the Election Law are not superseded by the inconsistent provisions of the local law, but dissents from that part of the opinion which holds that these provisions of the local law are separable and that the remainder of the local law is valid.

Judgment accordingly.