EDWARD JOHNSON et al., Appellants, *v.* SIMON ETKIN, as City Clerk and Clerk to the Council of the City of Schenectady, et al., Defendants, and CITIZENS' COUNCIL FOR PROPORTIONAL REPRESENTATION OF SCHENECTADY et al., Respondents.

Argued October 19, 1938; decided October 25, 1938.

*H. E. Blodgett* for appellants. Plan " C " being a general law, cannot be changed, altered or repealed by Local Law under the Home Rule Amendment (N. Y. Const. art. 12) or the City Home Rule Law (Cons. Laws, ch. 76). (*People ex rel. Shipston* v. *Thompson*, 187 N. Y. Supp. 395; 196 App. Div. 923; 231 N. Y. 541;

*Matter of Klein* v. *Dalton,* 245 N. Y. 537; *Hughes* v. *Jenss,* 258 N. Y. Supp. 515; *Cleveland* v. *City of Watertown,* 222 N. Y. 159; *Browne* v. *City of New York,* 241 N. Y. 96; *Matter of McCabe* v. *Voorhis,* 243 N. Y. 401; *People ex rel. Purser* v. *Cahill,* 119 Misc. Rep. 471; *Matter of City of New York* [*Elm St.*], 246 N. Y. 72; *County Securities, Inc.,* v. *Seacord,* 278 N. Y. 34.) The petition containing the Local Law was prematurely filed. (*Matter of Bass* v. *Board of Trustees,* 226 App. Div. 165; *People* v. *Norton,* 59 Barb. 169; *People* v. *Gardner,* 45 N. Y. 812; *Hebrew Orphan Asylum* v. *City of New York,* 150 Misc. Rep. 299; *Wingate* v. *Flynn,* 139 Misc. Rep. 779; *People ex rel. Purser* v. *Cahill,* 119 Misc. Rep. 471.)

*James P. Boyle, William D. Smith* and *Hyman J· Sacharoff* for Citizens' Council for Proportional Representation of Schenectady, respondent. Under the Home Rule Amendment (N. Y. Const. art. XII, §§ 3, 5), and the City Home Rule Law (§ 19-a, L. 1924, ch. 363, as amd. L. 1937, ch. 479), the proposed Local Law is a valid enactment and permits the legal amendment of Plan " C." (*Johnson* v. *City of New York,* 274 N. Y. 411; *Bareham* v. *City of Rochester,* 246 N. Y. 140; *Matter of Mooney* v. *Cohen,* 272 N. Y. 33; *Matter of Hood* v. *Eilert,* 275 N. Y. 579.) The effect of the adoption of Plan " C " was the same as if the Legislature had enacted such plan as a special law for the city of Schenectady and, therefore, it could be amended as a charter provision, by section 19-a of the City Home Rule Law. (*Matter of Mayor of New York* [*Elm St.*], 246 N. Y. 72.)

*Harry G. Coplon* for Schenectady Taxpayers' Association, respondent. The Optional City Government Law (L. 1914, ch. 444, as amd.) does not in terms and in effect apply alike to all cities. (*County Securities, Inc.,* v. *Seacord,* 278 N. Y. 34; *Matter of Mayor of New York* [*Elm St.*], 246 N. Y. 72.)

*Arlen T. St. Louis,* Corporation Counsel, for Simon Etkin, as City Clerk and Clerk to the Council of the city of Schenectady, et al., defendants.

CRANE, Ch. J. On November 6, 1934, the city of Schenectady adopted a simplified form of city government, known as Plan C, under chapter 444 of the Laws of 1914, as amended, also known as the Optional City Government Law. Plan C gives to the city six Councilmen and a Mayor to be elected by the voters of the city. Section 25 of this law (McKinney's Unconsolidated Laws, book 65, p. 85) reads: " Should any one of the plans of government provided for in this act be adopted, the same shall continue in force and effect for the period of at least four years after the commencement of the terms of office of the officials elected thereunder, and no petition proposing a different plan shall be presented during a period of three years and six months after such adoption." Section 38 makes the term of office of the Mayor and members of the Council under any of the plans four years. Section 87 reads: "All the legislative powers of the city, however conferred upon or possessed by it, are hereby vested in a board to be known as the ' Council of the city of ————.' * * * It shall be for all purposes the common council of the city." Referring back to section 8, we find that all existing laws are continued in these words, " Except insofar as any of its provisions shall be inconsistent with this act, the charter of the city, and all special or general laws applicable thereto, shall continue in full force and effect, until and unless superseded by the passing of ordinances regulating the matters therein provided for; but to the extent that any provisions thereof shall be inconsistent with this act, the same are hereby superseded."

The Councilmen, elected pursuant to Plan C adopted, began their term of office January 1, 1936.

The City Home Rule Law (Laws of 1924, ch. 363, § 11, as amd.), enacted pursuant to article XII of the Constitution of the State, provided that the local legislative body of a

city shall have power to adopt and amend local laws in relation to the property, affairs or government of the city relating to the powers, duties, qualifications, number, mode of selection and removal, terms of office and compensation of all officers and employees of the city, etc. We held in *Matter of Mooney* v. *Cohen* (272 N. Y. 33, 37) that the city legislative body, such as the Common Council in the present case, could amend the charter or revise the charter of the city in respect to these matters specified in the Home Rule Law. While this case dealt with a special act of the Legislature, yet we referred to section 20 of the City Home Rule Law which permitted a new charter to be adopted by the local legislative body of a city. This section reads: " A new charter may be adopted by the local legislative body pursuant to the provisions of this chapter, and subject to the procedure prescribed by this chapter. A new charter may also be adopted in any city pursuant to the provisions of this section." As this City Home Rule Law was enacted pursuant to power conferred by article XII of the Constitution of the State, known as the Home Rule Amendment, it cannot be inconsistent with the Optional City Government Law, as amended, and the provisions must be harmonized, if possible.

We conclude, therefore, that the Council of the city of Schenectady would have power to amend and modify its charter even though Plan C of the Optional City Government Law was in effect, and could adopt the proportional representation scheme for electing its officials. (*Johnson* v. *City of New York*, 274 N. Y. 411.)

The point is raised by the appellant that no local law can operate if it is contrary to an act of the Legislature relating to the property, affairs or government of cities, applying to all cities alike. It is claimed that as the Optional City Government Law gives to all the cities of the State the right to select any one of seven forms of government, that this is a general law within the meaning

of the provision (§ 12, subd. 2) of the Home Rule Law.
We do not so consider it. The Optional City Government
Law is not binding upon all cities; only eight so far
have chosen to come within it. It is optional. It may or
may not become part of the city charters and is dependent
for operation upon the electors of each city. This is not a
general law, immediately effective and operative in all
cities alike. It may operate in one city when adopted
and not in another. Its effectiveness as a law — its
force as a law is not general; it would only become general
in effect when adopted by all cities in one form or another.

We, therefore, determine that the attempted amend-
ment of the charter of the city of Schenectady by local
law does not run counter to section 12, subdivision 2, of
the City Home Rule Law.

By chapter 479 of the Laws of 1937, effective May 20,
1937, a new provision was added to the City Home Rule
Law, known as section 19-a. Being too long to quote,
I may summarize it by saying that a local law amending
a city charter may be adopted in a manner therein pro-
vided. Qualified electors of a city in number equal to
at least ten per centum of the total number of votes cast
for Governor at the last gubernatorial election in such
city may file in the office of the City Clerk a petition for
the submission to the electors of the city of such a pro-
posed local law to be set forth in full in the petition.
The City Clerk shall transmit such proposed local law
forthwith to the legislative body of the city. If this body
fail to pass it or to submit it to the electors at the next
general election, an additional petition may be filed with
the Clerk signed by five per cent of the qualified voters
who did not sign the original petition. Whereupon, the
local law must be submitted to the voters at the next
general election. The City Clerk must transmit it to
the election officers charged with the duty of publishing
the notice of such election. This law was complied with
by the electors in the city of Schenectady.

On June 30, 1938, there was filed with the City Clerk a petition, signed by more than ten per cent of the qualified voters, which proposed a local law changing the number of city Councilmen to nine and the method of selecting the Mayor. The terms of these officials were also shortened from four to two years. This proposed local law does not conflict with section 25 of the Optional City Government Law as the present officials will serve the four years under Plan C before the local law will go into effect, if adopted.

The Common Council having rejected the petition, an additional petition containing more than five per cent of the qualified voters was filed pursuant to this new section 19-a of the Home Rule Law, and the City Clerk is now required to transmit the proposed local law to the Election Commissioners of the county of Schenectady for submission at the next general election.

The plaintiffs here are taxpayers and they have brought this action to enjoin such submission, claiming, for the reasons above stated, that this proposed local law is or would be, if adopted, unconstitutional and that it also violates section 25 of the Optional City Government Law in that it has been presented during a period of three years and six months after the adoption of Plan C. As to this latter objection we may say that this period of three years and six months has reference to a petition to change from one of the seven city plans to another, and not to a modification of the charter under the Home Rule Law. Furthermore, Plan C we hold was adopted at the election of November 6, 1934, and the time of three years and six months commenced to run from that date. The plaintiffs say that it commenced to run from the time the officials took office, January 1, 1936, but it will be noted that when the Legislature had reference to such date, it so stated; the four years, for instance, during which the officials shall hold office under Plan C is " for the period of at least four years after the commencement of the terms

of office of the officials elected thereunder." (L. 1914, ch. 444, § 25.) This objection, therefore, made by the plaintiffs regarding the time limit is without validity.

For these reasons the judgment below should be affirmed, without costs.

RIPPEY, J. (dissenting). On June 30, 1938, under the assumed authority of the provisions of section 19-a of the City Home Rule Law (Laws of 1924, ch. 363, as amd. by Laws of 1937, ch. 479) a petition was filed with the City Clerk of the city of Schenectady, for submission to and adoption by the Council of that city of a local law to amend the charter of that city " to provide for electing the Council by proportional representation, and for that purpose defining the method and manner of nomination, and election of Councilmen, the number of Councilmen, and their terms, and changing the method of selecting the Mayor." In the event that the Council should not adopt the local law, the petitioners prayed that the question of its adoption be submitted to the electors of the city in the manner provided by the provisions of that section of the City Home Rule Law. The City Clerk transmitted the proposed local law to the Council. Upon the advice of the Corporation Counsel of the city and of the Attorney-General of the State that the proposed local law was in violation of and repugnant to the provisions of the Constitution and statutes of the State, or, at least, of doubtful legality, the Council denied the petition, and refused either to adopt the local law or submit the question of its adoption to the electors. Section 19-a provides for such a contingency. It reads: " If the said legislative body shall fail to pass such local law or to submit it to the electors of the city at the next general election held not less than sixty days after the legislative body votes to submit it, an additional petition filed with the clerk of the city at least two months and not more than four months after the filing of the original petition and signed by qualified electors who did not sign the original

petition equal in number to five per centum of the total number of votes cast for governor at the last gubernatorial election in such city may require the submission of the local law at the next general election held not less than sixty days after the filing of such additional petition. When so required the city clerk shall transmit such proposed local law in the form in which it is to be submitted to the election officers charged with the duty of publishing the notice of such election. * * * " Accordingly, on September 8, 1938, an additional petition was filed with the City Clerk requiring the City Clerk to submit the proposed local law to the Commissioners of Election of the county and city of Schenectady for submission to the voters at the general election to be held on November 8, 1938. This action is brought to restrain further proceedings by the City Clerk and the election officers and the submission to the voters of the city of the question of the adoption of the local law.

By its terms, no part of the proposed local law may become effective until January 1, 1940, and it cannot be in full force until July 1, 1941. Its validity, if adopted, is now an abstract question and ordinarily would not be considered by the courts. But the power of the electorate to amend the charter in the manner proposed is challenged and is of immediate concern. In the public interest, the petitioners, as taxpayers, ask that the court take jurisdiction and not only consider the validity of the proceedings for the submission but the power of the electors to adopt the local law. The action will lie in the discretion of the court. The question here is " one of prudence rather than one of power." Jurisdiction to determine the validity of a law will be entertained where public interest demands and prudence requires even though the action would otherwise be premature and though abstract questions alone may be involved (*Matter of McCabe* v. *Voorhis*, 243 N. Y. 401, 412).

By chapter 444 of the Laws of 1914, the Legislature of the State of New York enacted a law providing for

simplified *forms* of government for second and third class
cities of the State known as " the Optional City Govern-
ment Law." By chapter 407 of the Laws of 1935, this
law became applicable to *all* cities of the State. Seven
different plans of governmental structure were provided.
Each plan was complete in itself. The city of Schenec-
tady adopted on November 6, 1934, one of the authorized
plans designated as " Plan C," which provided for the
election, compensation, terms of office and powers and
duties of the Mayor and Council, for the number of
Councilmen to be elected and for an appointive City
Manager whose duties and powers were likewise therein
defined. The new plan became effective January 1, 1936.
A Mayor and a Council, consisting of six Councilmen at
Large, were elected in November, 1935, one-half for the
term of two years, each expiring on December 31, 1937,
and one-half for four years, each expiring on December
31, 1939, as provided in section 38. That section further
provided for the election of Councilmen thereafter to
take office for terms, respectively, of four years each as
the terms of Councilmen might respectively expire. Three
Councilmen were elected in November, 1937, in place of
those whose terms expired December 31, 1937. The
term of the Mayor was at all times to be four years.
Thus the terms of three Councilmen expire on December
31, 1941, and of the Mayor and three Councilmen on
December 31, 1939. All of these officers were nominated
and elected as provided in the general election law.

Section 2 of the proposed local law provides for the
election of nine Councilmen by the method of proportional
representation as provided in the local law and for the
selection of a Mayor from their own number, and section
3 for the shortening of the terms of the Mayor and three
Councilmen to be elected in November, 1939 to two
years. Section 3 of the proposed local law reads as
follows:

" Section 3. Terms of mayor and council.

" a. The terms of the mayor and of members of the council of the City of Schenectady shall be two years; provided however that the terms of the councilmen elected in the year one thousand nine hundred thirty-seven shall not be shortened.

" b. The terms of the mayor and councilmen to be elected in the year one thousand nine hundred thirty-nine are hereby shortened to two years and their terms shall end concurrently with the terms of the councilmen elected in the year one thousand nine hundred thirty-seven, at the end of the year one thousand nine hundred forty-one."

Thus, the proposed local law not only changes and shortens the term of office of officials to be elected under the provisions of the Constitution and laws of the State but additionally provides for a radically different governmental form and structure than now exists in the city. It provides for a form and structure not authorized in terms or effect by the provisions of the Optional City Government Law. It provides for the election of its administrative and legislative officers in a manner not authorized by the Constitution or laws of the State in effect at the time of the enactment of the Optional City Government Law. That law has in no respect been amended in a way to authorize the adoption of the local law in question.

It is asserted by the respondent, Citizens' Council for Proportional Representation, that " Under this local law it will be seen that Plan ' C ' will continue to operate unchanged (except that the terms of office of councilmen and mayor elected in 1939, are shortened to two years), until January 1, 1942 — six years after Plan ' C ' began to operate in Schenectady. This works no change whatever in Plan ' C ' form of government except that there will be eight councilmen and a mayor instead of six councilmen. The structure of the government is not changed and Plan ' C ' continues in operation as before with this difference — that a more representative method of electing the council is afforded; moreover, while the

term of the councilmen is reduced to two instead of four years, as under the present provisions of Plan ' C,' this shortening of the term of the councilmen from four to two years in no manner affects councilmen now in office, and the councilmen and mayor to be elected next year have notice of the shortening of the term before they run for office."

I cannot agree with any such contention. By the express terms of the local law it *amends* Plan " C." There is no provision in the Optional City Government Law which gives the city the power to *amend* any one of the plans set up. It had the power to adopt one of the plans named by the Legislature. It could not change the plan or enact any plan. The Legislature enacted the plans. The city could only adopt one of the plans thus enacted. The city may change to another specified plan or reject entirely the one which it has adopted. In section 25 of the act it is provided that " the same shall continue in force and effect for the period of at least four years after the commencement of the terms of office of the officials elected thereunder, and no petition proposing a different plan shall be presented during a period of three years and six months after such adoption." Section 3 of the act provides that " any city which shall adopt, in the manner hereinafter prescribed, one of the methods of government provided in this chapter, shall thereafter be governed by the provisions hereof." It could not amend and continue to operate under Plan " C."

Authority to provide for the structure of city government, if any exists, must be found in the Constitution (*Bareham* v. *City of Rochester*, 246 N. Y. 140). By the mandate of article XII of the Constitution of the State of New York and within the authority thereby conferred, the Legislature of the State enacted the City Home Rule Law (Laws of 1924, ch. 363), which took effect on April 25, 1924, and its amendment by section 19-a (Laws of 1937, ch. 479, effective May 20th of that year).

It was a general law applicable to all cities alike (*Bareham* v. *City of Rochester, supra*). It is no less a general law because it was not " immediately effective and operative in all cities " of the State at the same instant, or because all cities have not taken advantage of and legislated under its provisions in relation to their property, affairs or government and the powers, duties, qualifications, number, mode of selection and removal, terms of office and compensation of all their officers and employees, or because it is optional by its terms whether any city shall proceed to legislate under it, or because it is not binding upon all cities because only a few have elected to act under the authority which it confers (59 C. J. pp. 734, 735; §§ 320–322, 353). General applicability of a statute must depend not alone upon whether it is general in its terms, but also upon whether it is general in its effect (*Matter of Mayor of New York* [*Elm St.*], 246 N. Y. 72).

No less general is the Optional City Government Law (Laws of 1914, ch. 444, as amd. by L. 1935, ch. 407). It is a general law by its express terms (§ 2); it is likewise general in effect. At least four times this court has unanimously held the act to be a general law (*Cleveland* v. *City of Watertown*, 222 N. Y. 159; *People ex rel. Ferguson* v. *Vroman*, 222 N. Y. 586; *People ex rel. Shipston* v. *Thompson*, 231 N. Y. 541; *Matter of Klein* v. *Dalton*, 245 N. Y. 537). In the first, second and fourth cases Plan C was adopted in the cities of Watertown, Niagara Falls and Long Beach. In the *Shipston* case a proposal was made for the adoption of Plan F in the city of Niagara Falls. No one involved in this litigation has suggested that it is not a general law. All parties rely upon the previous decisions of this court to the effect that it is a general law. The act has to do with the *form* and *structure* of city government generally in *all* cities of the State. The effect of the act is general. The fact that all second class cities of the State did not elect at the same time or have not heretofore elected to adopt Plan C or any other of the

specific plans therein provided or some one or more of the several designated plans does not make the statute special rather than general. Its special or general character cannot be made to depend upon considerations extraneous of the law itself and of the Constitution. If that were not so as to every statute, the generality of its application would depend, not upon the legislative act or the legislative intent, but rather upon the whim and caprice of individuals or of bodies other than the Legislature which enacted it. Under such conditions, every statute would depend upon what was done under it; it would result in confusion in construction and application; the effect of such a rule would be intolerable.

Authority to enact the local law in question must be found in article XII of the Constitution and in the City Home Rule Law enacted by the Legislature of the State for the purposes of carrying out its provisions or it cannot be found at all. A local law, such as the one in question, may be adopted by a city under the provisions of article XII and of the City Home Rule Law (*Matter of Mooney* v. *Cohen*, 272 N. Y. 33; *Johnson* v. *City of New York*, 274 N. Y. 411) if the provisions thereof are open for use by the city. However, the provisions of the City Home Rule Law are not available to the city of Schenectady for the purposes of enactment of the local law in question. Section 7 of article XII of the Constitution provides, among other things, that " The provisions of this article shall not affect any existing provision of law; but all existing charters and other laws shall continue in force until repealed, amended, modified or superseded in accordance with the provisions of this article."

The Optional City Government Law is not expressly repealed by the City Home Rule Law, nor could it be repealed by implication (City Home Rule Law, § 33). On the contrary, it is confirmed by section 36 (*Hughes* v. *Jenss*, 268 N. Y. Supp. 515; *Matter of McLean* v. *Boyd*, 140 Misc. Rep. 218; *Matter of Klein* v. *Dalton, supra*).

Section 19-a of the City Home Rule Law conveys no power to enact. It relates only to matters of procedure.

Furthermore, the Optional City Government Law, being a general law, cannot be superseded or modified by a local law. "A law which affects the State at large is not subject to change by a local law although the State law may affect a city in its ' property, affairs or government.' " (Per HUBBS, J., in *County Securities, Inc.*, v. *Seacord*, 278 N. Y. 34, 38.) It is so provided in subdivision 2 of section 12 of the City Home Rule Law.

In view of what has been said above, it is unnecessary to pursue the discussion further or take up other questions that have been raised in this proceeding.

The judgment appealed from and the judgment of the Special Term should be reversed and the matter remitted to Special Term with directions to proceed in accordance with the prayer for relief specified in the complaint, with costs in all courts.

LEHMAN, O'BRIEN, HUBBS, LOUGHRAN and FINCH, JJ., concur with CRANE, Ch. J.; RIPPEY, J., dissents in opinion.

Judgment affirmed.