OPINION OF THE COURT
Fuchsberg, J.
Each of these two cases requires us to decide whether county legislatures in noncharter counties may, in carrying out their home rule functions, enact local laws providing that a vacancy in the office of county legislator occurring other than by expiration of its term is to be filled by the remaining membership of the body. In each case the local law is attacked on the ground that it is incompatible with the State Constitution and with various State statutes; in each it is asserted that the power to appoint interim county legislators rests with the Governor. Rejecting these contentions, we hold the local laws valid.
Matter of Resnick comes to us in the following posture. The local law there was adopted by the Ulster County Board of Supervisors acting as that county’s legislature. Louis Resnick, a county resident and taxpayer, and Louis M. Klein, a county legislator, thereupon petitioned the Supreme Court, inter alia, for a declaration of the local law’s invalidity. Special Term, converting the proceeding into a declaratory judgment action *284 (see Boryszewski v Brydges, 37 NY2d 361, 365), held the law invalid as contrary to subdivision 7 of section 400 of the County Law which vests the power to appoint "county officers” in the Governor. Though recognizing that our decision in Nydick v Suffolk County Legislature (36 NY2d 951, affg on opn at 81 Misc 2d 786) had rejected a similar reading of section 400 of the County Law, the court thought it sufficient reason to distinguish the cases that Nydick dealt with a county government established pursuant to a charter while Ulster County’s government was nonchartered. In upholding this decision, the Appellate Division, Third Department, also chose to read the State Constitution’s language that "the [State] legislature shall provide for filling vacancies in office” (art XIII, § 3) as barring the county legislature, in the absence of authorization by the State Legislature, from adopting a scheme for filling vacancies in local office (55 AD2d 222).
Rebeor v Wilcox arises out of a similar course of events in Oswego County, which too does not possess a charter. Acting pursuant to the like local law it had adopted, the county legislature selected William E. Dyer to fill a recent vacancy. At about the same time, the Governor, acting under authority with which he believed the State Legislature had endowed him, appointed Raymond Rebeor to fill the self-same vacancy. Two suits, heard by the courts below as one, promptly ensued. First, the minority leader of the county legislature, William J. McCarthy, instituted a proceeding seeking a declaration that Dyer’s appointment and the new local law under which it had been effected were both invalid. Rebeor, for his part, sought an order directing the Oswego County Clerk to accept his oath of office.[1] By stipulation, the Governor intervened in both cases. Special Term, believing itself bound by the Third Department’s decision in Resnick, declared the Oswego law invalid. However, the Appellate Division, Fourth Department, which heard the appeal in the Rebeor proceedings, found that Nydick governed, and reversed (58 AD2d 186).
We are aware that in each of the cases before us the term *285 for which the interim appointment was made has now expired and that, for all practical purposes, these cases are now moot. However, the events which precipitated them are not only recurrent but, because appointments to vacancies terminate with the next general election (NY Const, art XIII, § 3; Matter of Roher v Dinkins, 32 NY2d 180), cases such as these are not readily reached for final determination during incumbencies. Moreover, the conflict between two departments of the Appellate Division on the central issue before us casts a cloud on the legitimacy of the functioning of interim legislators so chosen. We therefore deem it appropriate to decide this issue (see Matter of Gannett Co. v De Pasquale, 43 NY2d 370; Matter of Oliver v Postel, 30 NY2d 171).
In doing so, we need not look far to find the guiding legal principle by which these cases are to be determined. The bill of rights for local governments directs that "[a]ll officers of local government whose election or appointment is not provided for by this constitution shall be elected by the people of the local government, or of some division thereof, or appointed by such officers of the local government as may be provided by law” (NY Const, art IX, § 1, subd [b]). The importance of this principle to the scheme of government in this State is emphasized by the specific grant of legislative authority to each local government to "adopt and amend local laws [relating to the] mode of selection and removal * * * of its officers” (NY Const, art IX, § 2, subd [c], par [1]). Recognition of the force of this stress on home rule is further evidenced by its reiteration in the statute which effectuates the constitutional mandates (Municipal Home Rule Law, § 10, subd 1, par [ii], cl a, subcl [1]). "We begin, therefore, with the premise that the State Constitution vests local government with the right to confer upon their officers the authority to appoint other officers of local government” (Matter of Dworsky v Farano, 41 NY2d 780, 781).
Clear as this view may be today, it has not always been so. The idea that local officials should be chosen by local constituencies is one with deep roots in our democratic polity (see People ex rel. Town of Pelham v Village of Pelham, 215 NY 374, where Judge Samuel Seabury reviewed case law which had already developed on that subject by the early part of this century; see, also, People ex rel. Metropolitan St. Ry. Co. v State Bd. of Tax Comrs., 174 NY 417, 431-435, affd 199 US 1; cf. McBain, The Doctrine of an Inherent Right of Local Self- *286 Government II, 16 Col L Rev 299, 303-308). But the local laws before us do not deal primarily with guaranteeing the basic choice of local officers by local electorates. More narrowly, as indicated, they focus on how these officers are to be chosen for interim periods when it is not practicable to refer the matter to the voters.
The allocation of the authority to decide how such a selection is to be made was not well defined in the constitutional provisions which preceded article IX as it was reshaped in 1964 (compare, e.g., section 9 with section 12 of article IX as they read in the period between 1959 and 1964). In the main, the older, more limited constitutional home rule provisions which existed before 1964, insofar as they dealt with internal structure, applied essentially to cities and villages. Counties were left largely to a choice among alternative forms of chartered or unchartered local government organization outlined by the State Legislature; at that time, if a county desired to design its own structure, it had to pursue a cumbersome and discouraging course (NY Const, art IX, §§ 1-4 [as amd 1959]; Diamond, Some Observations on Local Government in New York State, 8 Buffalo L Rev 27, 38-39).
Yet, even in the era when a very narrow interpretation was given to the home rule provisions, municipalities were accorded great autonomy in experimenting with the manner in which their local officers, including legislative officers, were to be chosen. In some instances, this was predicated directly on the provision dealing with the "mode of selection and removal” of their officers (Bareham v City of Rochester, 246 NY 140; Matter of Blaikie v Power, 13 NY2d 134, 144-145). At other times, it was derived more generally from the concept that such measures fell within the scope of their power to manage their "property, affairs or government” (Baldwin v City of Buffalo, 6 NY2d 168, 173).
All the changes made by the 1964 home rule amendment and its contemporaneously adopted implementing statute were expansive. With some exceptions, identical grants of authority were made to all local governmental units — counties and towns, as well as cities and villages. The manifest intent was to encourage local governments to make a living document of the bill of rights for local governments (NY Const, art IX, § 1 [as amd 1964]). In this perspective, the decisions of the Ulster and Oswego County legislatures to enact the local laws involved here were well within both the philosophy and the *287 explicit formulations of the constitutional and State legislative enactments.
Thus, if the challenges to these local laws were founded on a clearly articulated decision by the State Legislature to intrude upon a domain which county legislatures presumptively control, we might face the more difficult task of determining where it is that our Constitution has set the dividing line between these two levels of legislative authority (cf. Wambat Realty Corp. v State of New York, 41 NY2d 490; Adler v Deegan, 251 NY 467). The present cases rest, however, only on implications which may be drawn from constitutional and statutory sections not directly related to the questions before us. The most significant of these[2] spring from the constitutional provision that "the legislature shall provide for-filling vacancies in office”. (NY Const, art XIII, § 3.) Those critical of the local laws assert these words should be construed as limiting the power of local governments, unless authorized by the State Legislature, to devise their own solu-. tions for filling interim vacancies in office. They argue that, for counties which operate under county charters, authorization is implicit in the act of approving the charter itself, but that for other counties no such authorization may be inferred. We find neither strand of this argument convincing.
First, it would be contrary to the spirit of home rule to allow the issue of whether county legislatures may adopt provisions relating, as these do, to their "affairs or government” to turn on the existence or nonexistence of county charters. Our statutes, as they have evolved, now allow counties considerable latitude to choose that structure of local government which is best tailored to serve particular community needs. An aspect of government organization as limited as the method of filling legislative vacancies can hardly have been intended to be excepted. To resort to implication to find that power nonexisting unless it is included in a comprehensive county charter would not only confine the authority of local governing bodies far more closely than the import of any language in the home rule article suggests, but, by its over-restrictive nature, would tend to undermine initiative on the part of local government. It would also run counter to article IX’s command that the rights and powers granted to local *288 governments "shall be liberally construed” (NY Const, art IX, § 3, subd [c]).
Nowhere in the statutory guidelines for county charters is there any reference to filling vacancies in office (see Municipal Home Rule Law, § 33). That it may in fact be incorporated in some individual charters is no reason, therefore, to believe that the fundamental power possessed by a charter county to adopt such a provision is rooted any less than that of a nonchartered county in the general authorization granted all local governments to determine the mode of selection of their officers. In short, nothing turns here on whether the filling of vacancies is covered by local law or county charter.
Secondly, we do not read the constitutional provision on filling vacancies as vesting the State Legislature with such exclusive authority that all other provisions bearing on that subject are to be ignored. Article IX in its current form was adopted much later than section 3 of article XIII, the source of the State legislative power on which those who challenge the local laws rely. This is not the first time that we have been asked to strike down locally adopted provisions for selecting local officers on the ground that there are supposed inconsistencies between the home rule article and other parts of the Constitution. As we held in Bareham v City of Rochester (246 NY 140, 145, supra), if inconsistencies in the Constitution do exist, the later amendment controls.
The home rule article and statutes receive their inspiration from the deeply felt belief that local problems should, so long as they do not impinge on affairs of the people of the State as a whole, be solved locally. The county governments, in seeking to make their own provisions for continuity of representation of local constituencies, were not acting out of harmony with these enactments. To invalidate the local laws because of the rationalizations urged upon us in these cases would be to take a step in the direction against which Cardozo warned when he observed that the home rule enactments "adopted by the people with much ado and after many years of agitation, will be another Statute of Uses, a form of words and little else, if the courts * * * ignore the new spirit that dictated their adoption” (Matter of Mayor, etc., of New York [Elm St.], 246 NY 72, 76).
Finally, we note that we have reviewed the procedural objections which have been urged against the manner in *289 which these local laws were adopted and we likewise find them to be without merit.
Accordingly, we hold Ulster County Local Law No. 1 of 1976[3] and Oswego County Local Law No. 2 of 1971[4] valid and, therefore, in Resnick the order of the Appellate Division, Third Department, must be reversed and the matter remitted for the entry of judgment declaring the law valid and, in Rebeor, the order of the Appellate Division, Fourth Department, must be affirmed.
Chief Judge Breitel and Judges Jasen, Gabrielli, Jones, Wachtler and Cooke concur.
In Matter of Resnick v County of Ulster: Order reversed, without costs, and matter remitted to Supreme Court, Ulster County, for entry of a judgment declaring Local Law No. 1 of 1976 valid.
In Rebeor v Wilcox: Order affirmed, without costs.

. Rebeor had also obtained an appointment from the Mayor of the City of Fulton to fill the legislative vacancy, whose constituency included a fair portion of the city’s residents. As the office was on a county body, albeit the boundaries of the district were determined by the alignment of city wards, Special Term properly held the Mayor powerless to make such an appointment (see Kasperek v Wilcox, 80 Misc 2d 1024; Matter of Knauf v County Legislature of County of Monroe, 53 Misc 2d 917, app dsmd 28 AD2d 643).

. Those resting on subdivision 7 of section 400 of the County Law and on section 43 of the Public Officers Law were rejected when we affirmed on the opinion of Special Term in Nydick (36 NY2d 961, supra).

. Ulster County Local Law No. 1 of 1976 provides: "If a vacancy occurs in the office of County Legislator, otherwise than by expiration of the term, the County Legislature shall fill the office * * * by appointing to said office, any [qualified] resident of the district in which the vacancy occurred”.

. Oswego County Local Law No. 2 of 1971 (§ 2) provides: "In the event of a vacancy * * * before the expiration of the term of any member of the Legislature, such vacancy shall be filled by appointment of the County Legislature of a qualified person”.