John J. Naples, Esq. Corporation Counsel, Buffalo
You have transmitted to us for review a proposed amendment to the city's code of ethics. As a general policy, we do not review the details of proposed local enactments, since these matters are reserved for consideration by the local legislative body based upon local conditions. However, we do advise local governments whether they possess the authority to enact measures dealing with various subjects. In a telephone conversation with a member of your staff, it was agreed that the scope of this opinion would be limited to whether a local government is authorized to enact regulations prohibiting the use or expenditure of campaign contributions for non-campaign related purposes. We believe that this is the basic question underlying the proposed regulation.
Article 14 of the Election Law is a comprehensive and detailed regulatory framewok requiring the reporting of campaign receipts and expenditures and providing limitations on campaign contributions (Election Law, §§14-100, et seq.; 9 NYCRR Part 6200). The Article is silent concerning the disposition of surplus campaign funds. The State Board of Elections has concluded that "there is nothing in the Election Law which limits the use of surplus funds" (1979 Formal Opinion #3).
The governing body of a city (and other municipalities) is required to adopt a code of ethics "setting forth for the guidance of its officers and employees the standards of conduct reasonably expected of them" (General Municipal Law, § 806). A code of ethics may prohibit certain conduct, which in the judgment of the governing body is inappropriate (ibid.). We believe that the proposed restriction on the use of surplus campaign funds is an ethical matter. Campaign contributions are made to assist a candidate for public office. They are not made for the unrestricted personal use of a candidate. We believe that a local government might reasonably conclude that the conversion of surplus funds to personal income or its use for other nonelection purposes creates an appearance of impropriety and erodes public confidence in government. Generally, the function of codes of ethics is to establish standards to ensure that public officers and employees avoid or disclose conflicts of interest and do not engage in a course of conduct that is improper or creates an appearance of impropriety. We believe that the proposed restriction falls squarely within this guideline.
In addition, we believe that the proposed action would also be within the grant of home-rule power to a city. A local government is authorized to enact local laws not inconsistent with the Constitution or any general laws in relation to its property, affairs and government and in relation to the "powers, duties, qualifications, number, mode of selection and removal, terms of office, compensation, hours of work, protection, welfare and safety of its officers and employees" (Municipal Home Rule Law, § 10 [1][i] and [ii][a][1]). The Court of Appeals has construed the term "mode of selection" as expressing an intent to allow a city to determine not only whether its officers are to be elected or appointed but also to define the precise method by which either an election or appointment shall be effected (Bareham v City of Rochester, 221 App. Div. 38
[1927] judg mod 246 N.Y. 140 [1927]). Under this grant of authority in the City Home Rule Law, the Court decided that the city was authorized to enact a local law establishing a common council of nine members, five members elected at large and one from each of four districts, all on a non-partisan basis (ibid.). The Court of Appeals in Bareham broadly construed home rule powers to permit a city to determine procedures for local elections. We believe that the contributing of funds for the election of a candidate is part of the mode of selecting an officer, within the Bareham decisions broad definition. It is as much a part of this process as is party affiliation. Therefore, we believe that a city is authorized to restrict the use of surplus campaign funds. In our opinion such a restriction is also within the powers granted to a local government to adopt local laws relating to its affairs and government and in relation to the powers and duties of local officers and employees. Using the above grants of home-rule power, the restrictions could be applied both to incumbent and non-incumbent candidates.
We recognize that the Election Law establishes many procedures that apply to local elections, which local governments are powerless to change. However, we have found no provision of the Election Law that deals with the disposition of surplus campaign funds. Therefore, the proposed local action would not be inconsistent with a State law. While it appears that a local government would have no authority to enact campaign contribution reporting requirements in the face of the detailed and comprehensive State regulation of this subject, the proposed regulation of the disposition of surplus campaign funds is not inconsistent with the reporting requirements. It is an entirely different subject. Nor have we discovered from the legislative history of Article 14 of the Election Law or from the provisions of the Article any intent that reporting was viewed as a means to regulate the use of campaign funds. While disclosure may tend to inhibit the personal use of funds, such use is not prohibited and is not subject to sanction. Article 14 places limits on campaign contributions, which would be difficult to enforce without the reporting requirements (§ 14-114).
It appears that the only way to say that the city is without power to adopt the proposed restriction would be to conclude that any election matter, whether or not regulated by State law, is beyond the authority of local legislatures. The provisions of the Election Law provide no basis for such a conclusion, nor is it consistent with judicial interpretation (Bareham v City of Rochester, supra).
We conclude that a city may prohibit the use or expenditure of campaign contributions for non-campaign related purposes.