In the Matter of the Petition of GEORGE A. BURTON, Petitioner, v. MAUDE C. SCHMIDT and Others, Respondents.

Supreme Court, Herkimer County, November 30, 1926.

**Elections — primary election — member of Republican State committee — resolution of State committee, providing that two members, one of whom should be woman, should be elected from each Assembly district, is not authorized by Election Law, § 11, and violates State Constitution — application, under Election Law, § 330, by male candidate who received more votes than woman, to compel issuance of certificate of election to him, granted — Election Law, § 270, violated by issuance of certificate to candidate not receiving highest number of votes — board of elections without authority to disregard will of majority.**

A resolution passed by the Republican State committee on May 21, 1926, providing for the election of two members of said committee, one of whom should be a woman, from each Assembly district in the State, violates the Election Law as well as the State Constitution in that it clearly restricts the free choice of the voter at a primary election by making it mandatory for an Assembly district to elect one woman to the said State committee. Moreover, said resolution runs counter to section 11 of the Election Law in that said section authorizes the State committee to merely fix the number of its members and to determine the unit of representation from which members shall be elected, and neither expressly nor by implication does it authorize said committee or the convention of the Republican party to determine the sex of the members of said committee.

Accordingly, petitioner's application pursuant to section 330 of the Election Law for an order declaring the certificate of election issued to the respondent, a woman, null and void and directing said board to issue a certificate to the petitioner must be granted, where it appears that the petitioner and three others, two of whom were women, were candidates for membership on the Republican State committee at the primary election held on September 14, 1926, and that notwithstanding the fact that petitioner polled ninety-six more votes than did either of the women candidates, said board of elections, pursuant to the resolution of the Republican State committee, certified the election of the respondent.

Furthermore, the action of the board of elections is not in keeping with the mandatory provision of section 270 of the Election Law which provides that the candidate receiving the highest number of votes for election to a party position shall be elected to such position. The board of elections had no right to disregard the will of the voters of Herkimer county.

MOTION by petitioner, pursuant to section 330 of the Election Law, for an order vacating and setting aside a certificate of election as member of the Republican State Committee from Herkimer

county issued to Maude C. Schmidt, and compelling the board of elections of said county to issue such certificate to the petitioner.

*Charles B. Hane* and *David E. Snyder,* for the petitioner.

*Frank A. Schmidt,* for the respondent Maude C. Schmidt.

*Clarence R. King,* for Republican State Committee.

EDGCOMB, J.    At the recent primary election of the Republican party in the county of Herkimer, held on September 14, 1926, two members of the State committee were to be elected from that county. There were four candidates, two men and two women. Charles A. Crandall received 2,873 votes, George A. Burton, the petitioner, 2,822 votes, Maude C. Schmidt 2,726 votes, and Bertha Fowler 2,702 votes. The board of elections of the county issued certificates of election to Charles A. Crandall and Maude C. Schmidt, notwithstanding the fact that Mr. Burton received 96 votes more than Mrs. Schmidt.

Mr. Burton, the aggrieved candidate, brings this proceeding, pursuant to the provisions of section 330 of the Election Law (as amd. by Laws of 1924, chap. 405), for an order declaring the certificate of election issued to Mrs. Schmidt null and void and vacating the same, and directing the board of elections of Herkimer county to issue such certificate to the petitioner.

The commissioners of election justify their action in passing over Mr. Burton and certifying the election of Mrs. Schmidt, even though she received a less number of votes than the petitioner, by reason of a resolution passed by the Republican State committee on the 21st of May, 1926, which provided that two members of the committee, one of whom should be a woman, should be elected from each Assembly district.

If the State committee had a legal right to thus restrict the election of its members, and its determination as to the sex of its members controls rather than the will of the majority of the enrolled Republican voters of the Assembly district, the petitioner has no relief here. This motion turns on the answer to that question.

Section 11 of the Election Law (as amd. by Laws of 1925, chap. 510) provides that the State committee shall consist of such number and its members shall be elected from such units of representation as the party shall provide by a rule adopted at a State convention, or, if done prior to June 1, 1926, by the State committee itself. It is under this provision that the rule here under consideration was passed. It will be noted that this section does not expressly nor by implication authorize the committee or the party convention to determine the sex of the members of the committee. It authorizes two things and two things only: (1) The fixing of the number of

members of the committee; (2) the unit of representation from which members shall be elected. When that is done the enrolled voters of the party elect the members. The most that can be said is that this particular section does not in so many words place any restriction on a party in determining the sex or other qualifications of the members of its State committee.

The qualifications which an office holder must possess are set forth in detail in section 3 of the Public Officers Law (as amd. by Laws of 1925, chap. 30). The absence of any reference to sex in that section indicates that it was never intended to bar either a man or a woman from holding any office simply because of his or her sex. Especially is such inference legitimate in the light of the provisions of article XIII of the State Constitution, which prescribes that no test, other than the ability of the office holder to take the prescribed oath of office, shall be required as a qualification for any office of public trust.

Section 108 of the Election Law prescribes in detail the form of the ballot to be used at a primary election. It directs that immediately below the title of the office or position shall be printed the number of persons to be nominated for the office or elected to the position. In the instant case the provisions of the statute were complied with and the voters were instructed to vote for two. They were not told that they must vote for one woman; they were simply instructed to vote for two; any two. If the Legislature intended to give a party the right to determine that only certain persons were eligible to hold the position of State committeeman, it stands to reason that, when the form of the ballot was so definitely fixed, a provision would have been inserted which would have correctly informed the voter who he might safely vote for and have his ballot counted, and not mislead him by telling him that he could vote for any two.

Our government was founded upon the theory of majority rule.

The idea of passing over a person who has received the greater number of votes and declaring one who has received a lesser number elected to an office is repugnant to one's idea of popular government. If it can be done at a primary election there is no reason why it cannot be done at a general election. One does not have to be a prophet to see where such a situation might lead. The most hallowed right of the American citizen is the franchise. True, it is not duly prized by many, but by the masses it is held sacred. To disfranchise a majority of the voters, and put in office to represent an electorate the choice of the minority would create a situation which a free and independent people would never tolerate.

If there can be any doubt as to the illegality of the act of the

board of elections in declaring Mrs. Schmidt elected over Mr. Burton, when she received a lesser number of votes, it disappears in the light of the clear and mandatory provision of section 270 of the Election Law, which provides as follows: " The candidate receiving the highest number of votes for nomination for a public office or for election to a party position voted for wholly within the political unit for which such board is acting, shall be the nominee of his party for such office or elected to such party position, and the board, if requested by a candidate elected to a party position, shall furnish to him a certificate of election."

So far as I have been able to ascertain the only decision in this State which bears in any way on this controversy is one of Mr. Justice Abraham L. Kellogg, in *Matter of Slawson* (111 Misc. 271). In that case the Broome County Republican committee, pursuant to the authority conferred upon it by the Election Law, adopted a rule that the county committee should consist of two members from each election district, who should be enrolled voters of the party residing in the election district in which they were to be elected, one of whom should be a man and one a woman. It was held that the committee had no right to adopt any rule contrary to the provision of the statute, and that a regulation making it mandatory for a district to elect one man and one woman was in violation of the Election Law as well as the State Constitution, in that it clearly restricted the free choice of the voter at a primary election. The same reasoning is applicable here.

In attempting to arbitrarily fix the sex of its members I think that the State committee overlooked a principle which has recently become firmly established in this country. After many years of agitation and education, brought about largely by the efforts of the women who were discriminated against, the word "male" was eliminated from article II of the State Constitution, which defines the qualifications of voters, and article XIX was added to the Federal Constitution. All invidious distinction between the sexes was thus done away with when it came to voting. It has taken many years to bring about such equality, but it has come at last, and men and women now stand on the same footing when it comes to exercise the right of franchise. The Federal Constitution goes so far as to provide that the right of a citizen to vote shall not be abridged or denied on account of sex either by the United States or any State. Any law or rule which restricts the free choice of a voter in expressing his or her choice for an official to represent him is contrary to the spirit of the Constitution.

If the rule here under consideration be permitted to override the will of the majority of the voters it is not difficult to visualize a

18

situation where both sexes would be discriminated against in many offices. Such a condition would necessarily create friction and discord, and lead to another long struggle to rectify such injustice.

In justification of the enforcement of the regulation in question it is urged that a party should be permitted to govern itself and that the rule in question was adopted in the interest of fairness and in a desire to give to the women voters an equal opportunity and representation with the men. In this connection it might be well to note that the resolution provides that at least one member of the State committee from each Assembly district must be a woman. There is no requirement that one must be a man. Both could be women. In fact under this rule the entire State committee could be women, if the enrolled voters of the various units of representation so decreed. But that is not important here. Doubtless the resolution does not state accurately what was intended

I have no criticism with any legitimate effort to bring about the selection of both men and women to the various committees of the political parties. Any one who has had a practical experience in the school of politics will recognize the advantages to be gained by such procedure. It would be unfortunate if a political committee should be composed of all men or all women. Ours is a government by party, and the more people who become interested in their party and give to it their counsel and service the better and more representative becomes that party. Anything which works for the betterment of a party inures to the benefit of the government and the country. One trouble with our government to-day is the indifference of the voters. Any legitimate effort or scheme which will induce the right kind of people to take an interest in party government should be encouraged. Doubtless the intent of the committee in adopting this resolution was to interest the women of the State in the party, by giving them a voice in its management. That is a worthy intention.

Nevertheless, estimable as may be the motive back of the rule, if the result runs counter to the statute or the Constitution, it cannot prevail.

Mr. Burton was elected. Mrs. Schmidt was not. The board of elections had no right to disregard the will of the majority of the voters of Herkimer county and issue the certificate of election to Mrs. Schmidt. That certificate is set aside, and the board is directed to issue the proper certificate to the petitioner.

The good faith of all parties cannot be questioned. Therefore, no costs are allowed.

Prepare an order in accordance with the above opinion and send me for my signature.