In the Matter of JOSEPH T. HAMMER, Individually and as Chairman of the Saratoga County Committee of the Democratic Party, et al., Petitioners, against THOMAS J. CURRAN, as Secretary of State, et al., Respondents.

Supreme Court, Special Term, Albany County, November 20, 1952.

418

*James G. Heffernan* and *Daniel H. Prior* for petitioners.

*John A. Murray, John J. O'Malley, Thomas E. Ryan* and *William D. Ryan* for James W. Nolan and others, respondents.

HAMM, J. This proceeding is brought under section 330 of the Election Law.

At a meeting of the Saratoga County Democratic Committee on May 6, 1952, the following resolution was passed unanimously:

Resolved, that the votes cast for Joseph T. Hammer for chairman be deemed to have been cast for the following:

| | |
|---|---|
| Chairman: | Joseph T. Hammer |
| Vice Chairman: | Mary H. Cassidy |
| Treasurer: | Harry McLane |
| Secretary: | Peter Hofsess |

and be it further

Resolved, that votes cast for Dr. James Nolan for chairman be deemed to have been cast for the following:

| | |
|---|---|
| Chairman: | Dr. James W. Nolan |
| Vice Chairman: | Julia Bielkiewich |
| Treasurer: | Thomas Dwyer |
| Secretary: | Daniel J. Kelley |

Eight thousand one hundred ninety-five and five-tenths votes are involved. The petitioners claim 4,241 and concede that the respondents legally received 3,733.5 votes, the petitioners also contend that 221 additional votes counted for the respondents should not have been credited either to the petitioners or the respondents.

Prior to the attempted voting and after the roll call the incumbent county chairman, the petitioner Joseph T. Hammer, appointed Thomas R. Ryan, temporary chairman. Mr. Ryan, now named as a respondent, was a partisan of the respondent candidates for office. No objection was made either to his assuming the conduct of the voting or to this procedure. The temporary chairman ruled invalid 1,453.5 proxy votes attempted to be cast for the petitioner Hammer and credited to the respondent Nolan 107.5 votes of committeemen present in person who announced their votes for the petitioner. On the trial in addition to the 1,453.5 proxy votes ruled invalid at the meeting the respondents questioned also 329.5 additional votes.

The most intelligible and simplest method of reaching a conclusion is to consider the respondents' objections to the votes claimed by the petitioner and, after consideration of each objection, to make deductions from the petitioners' claimed total where warranted by the law and the facts.

To a major extent the facts have been stipulated.

The first objection relates to the form of proxies used by twenty-seven members of the county committee. The county chairman mailed to the members of the committee the following combined notice and form of proxy in which he designated himself as proxy:

April 28th, 1952

Dear Committeeman:

There will be a meeting of the Democratic County Committee at City Hall, Saratoga Springs, at 2 o'clock P.M., Eastern Daylight Saving Time, on Tuesday, May 6th, 1952, for the purpose of County Committee Organization and for such other business as may properly be brought before the committee.

Your attendance is urgently requested.

If you cannot attend, please sign the proxy below and return it to me in the self-addressed envelope enclosed for that purpose.

JOSEPH T. HAMMER
Democratic County Chairman

*Proxy*

I, ......................, a member of the Democratic County Committee from the ........... election district, Town of ................ County of Saratoga, hereby designate and appoint Joseph T. Hammer my proxy to attend a meeting of the Democratic County Committee of Saratoga County to be held at the City Hall in the City of Saratoga Springs, New York, May 6th, 1952, and all adjournments thereof, to vote for me and in my place as fully as I could if personally present.

Dated: ...................., 19....

Signed ..............................

It was stipulated that there is no question of party funds' having been used in connection with the proxies.

Section III of article III of the rules of the Saratoga County Democratic Committee provides: '' Any duly elected member may substitute in his place and stead any enrolled voter of the Democratic Party in the County of Saratoga to act for him and to attend meetings of said County Committee, and any such substituted member shall have full power to vote, but shall not otherwise participate in the deliberations of said Committee, or in the proceedings of said meetings.''

The respondents' objection is without merit. Nothing in the law or party rules forbids the county chairman to seek re-election or to solicit support for his candidacy. The committeemen were not required to use the proxy if they desired not to do so. Or, using it, they could have stricken out the petitioner's name and substituted the name of their choice.

The respondents' next objection relates to what they term '' wrong districts ''. Section I of article I of the rules of the

Saratoga County Democratic Committee states: "The Democratic County Committee of the County of Saratoga shall consist of two members from each Election District of Saratoga County, each of which members shall be an enrolled voter of the Democratic Party legally residing in the Election District in which he (or she) is elected and each of which members shall be elected by the enrolled voters of the Democratic Party legally residing in such district, except as hereinafter otherwise provided."

The 329.5 potential votes of the committeemen not residing in the districts in which they were elected respectively were for the first time for this specific reason questioned on the trial. The objection is not tenable. A rule of a county committee or State committee imposing upon the eligibility of candidates for membership limitations more restrictive than the statutory provisions is invalid. This long has been established. (1911 Atty. Gen. [Vol. 2], 677; *Matter of Slawson,* 111 Misc. 271; *Matter of Burton* v. *Schmidt,* 128 Misc. 270.)

A third objection relates to the votes of George F. Willison and Mary Pasquarell. At a meeting of the Saratoga County Democratic Committee in September, 1951, Edward J. Cramer, who was not a committeeman at the time, offered a motion to appoint George Bilodeau and Mary Pasquarell, an enrolled member of the Democratic party, to fill vacancies and Mary Bilodeau, who also was not a member of the committee at the time because of her prior resignation, made a similar motion as to George F. Willison, an enrolled Democrat at the time, and as to Edward J. Cramer. The potential votes of Edward J. Cramer and George Bilodeau must be deducted from the petitioners' claimed total for other reasons that will appear in a subsequent discussion. But it is contended that Mary Pasquarell and George F. Willison, both of whom were eligible, did not become members of the committee solely because the motions for their selection to fill vacancies were not made by members of the county committee. Subdivision 1 of section 17 of the Election Law provides: " 1. In case of the death, declination, disqualification, removal from district or removal from office of a member of the state or county committee, or the failure to elect a member, as by reason of a tie vote, the vacancy created thereby shall be filled by the remaining members of the committee by the selection of an enrolled voter of the party qualified for election from the unit of representation as to which such vacancy shall have occurred."

It is not disputed that Willison and Pasquarell were selected by the county committee. That the action was initiated by persons who failed to possess or had surrendered membership in the committee was merely an irregularity.

The next question relates to the adoption of a unit rule by the town committee of the Town of Milton. The Town of Milton adopted the following by-law: " The members of the Saratoga County Democratic Committee, who service that Committee as the Town of Milton Democratic Committee, in the seven election districts of that town, will, when called upon to vote in the County Committee on matters that come before that body, vote as a unit. Whenever the Town Committee is called on to vote on matters coming before the County Committee, the Chairman of the Town Committee will call the meeting and present the matter in full for a vote; the majority vote of the Town Committee will rule and bind the entire committee. Proxies will be given to the Chairman by all fourteen Committeemen to be voted as a unit, pursuant to the majority vote on the particular matter, at the proper time, at the meeting of the County Committee."

On April 28, 1952, prior to the meeting of the county committee on May 6, 1952, a meeting of the Milton town committee was held. The town committee by a majority vote decided to support the respondent James W. Nolan and his list of candidates. Pursuant to this vote all fourteen town committeemen, including Saul Balmuth, Theodore Kurko and Millard Jewett, delivered their individual proxies to the town chairman for the purpose of his voting them at the county organization meeting. At the meeting Messrs. Balmuth, Jewett and Kurko appeared in person and attempted to offer their votes. The temporary chairman refused their request and on the contrary counted their combined votes, amounting to 107.5, for the respondents.

Section II of article V of the rules and regulations of the Saratoga County Democratic Committee requires a town committee in each town. Subdivision c of section III of article V of the rules provides that town committees " may adopt such rules and regulations as they may desire, subject, however, to the provisions of the Election Law of the State of New York and to the rules and regulations of the County Committee."

A county committee may provide by its rules for the formation of a town committee under the authority conferred by section 14 of the Election Law, which states: " All committees other than state and county committees shall be formed in the manner provided for by the rules of the party."

Section 15 of the Election Law provides: "Each committee may prepare rules for the government of the party within its political subdivision, which may include provisions for the payment of dues, and that failure to pay them shall be cause for removal by the committee. Within three days after the adoption of such rules a certified copy thereof shall be filed by the state committee in the office of the secretary of state and by the county committee in the office of the secretary of state and in the office of the board of elections of the county. Such rules shall continue to be the rules for the committee until they are amended or new rules adopted."

Nowhere in the Election Law is there any provision for the the adoption of rules by committees other than State or county committees. On the contrary, careful provision is made by section 15 for the filing of such rules in the office of the Secretary of State and at the Board of Elections, whereas no provision exists for the filing of rules of a subordinate committee such as the town committee.

Section 12 of the Election Law requires that: "the voting power of each member shall be in proportion to such party vote." It seems that the legislative intent was that those who voted for the Democratic candidate for Governor, even though not enrolled in that party, should have, through the chosen representatives of the party, a proportionate vote in the party management. A majority of committeemen in a subdivision may not deprive a minority of committeemen of the proportionate franchise conferred on them by law. That the three committeemen who appeared in person had given proxies is of no consequence. A proxy is revocable at will.

It may be mentioned that the 107.5 potential votes of the committeemen who appeared in person are not included in the total of 3,733.5 conceded to the respondents.

Objection is made also to the "holding over" of certain committeemen who were at all times enrolled and in no respect disqualified from being elected committeemen. These committeemen were elected in 1950 or constituted to fill vacancies at the county committee meeting in 1951. In 1952 no committeemen were elected in the districts they represented.

Section II of article I of the rules and regulations of the Saratoga County Democratic Committee provides: "The term of office of each member of said Committee shall be two years, effective at Primary Election to be held in the year 1926."

Section III of article I of the rules and regulations of the Saratoga County Democratic Committee also provides: "Any

vacancy in the Committee may be filled at any meeting of the Committee by the election of an enrolled voter of the Democratic Party legally residing in the District where such vacancy exists, to serve for the unexpired term, such election to be by a majority of the voting power of the Committee.'' It is contended that these provisions limit the terms of committeemen to the next primary election at which committeemen are elected and, in the event that no committeemen are elected, the incumbent committemen do not hold over. In section 13 of the Election Law it is stated: '' Members of both committees shall be elected at fall primaries, except that in a year when electors of a president and vice-president of the United States are to be elected, such members of committees shall be elected at the spring primary. The members of both committees shall hold office until the election of their successors.''

It does not appear that the rules of the county committee are in conflict with the Election Law, but, if they be so interpreted, then to the extent that they are in derogation of section 13 of the Election Law they are invalid. It follows that the enrolled members of the party who were duly elected in 1950 at the fall primary or in 1951 at the county committee meeting and who maintained their enrollment and suffered no disqualification held over until the election of their successors and were entitled to vote.

It is objected also that the attempt to vote the proxies executed to the petitioner Hammer was made by Mr. Heffernan, the attorney for the petitioners in this proceeding, and not by Mr. Hammer himself. Mr. Hammer was present and it is not contended that Mr. Heffernan was acting without his consent or not on his behalf. This was at most merely an irregularity.

Another objection is based on the proxy rule of the county committee which provides as previously set forth (art. III, § III): '' Any duly elected member may substitute in his place and stead any enrolled voter of the Democratic Party in the County of Saratoga to act for him and to attend meetings of said County Committee, and any such substituted member shall have full power to vote, but shall not otherwise participate in the deliberations of said Committee, or in the proceedings of said meetings.''

It is contended that, because of the wording of the proxy rule, although members elected at a primary election may give proxies, proxies given by members chosen by the county committee and not elected at the primaries were invalid. Section 17 of the Election Law provides: '' the vacancy created thereby

shall be filled by the remaining members of the committee by the selection of an enrolled voter of the party ". A duly elected member includes one selected by the members of the county committee. " Selection " may include both appointed and elected officers. (*Bareham* v. *City of Rochester*, 128 Misc. 642, mod. on other grounds 221 App. Div. 36, further mod. on other grounds 246 N. Y. 140.) Moreover, to interpret the county committee rule that members of the county committee constituted by " selection " to fill vacancies did not stand in all things on equality with those elected at the primaries would imply an inequitable and absurd consequence. As used in the foregoing rule " any duly elected member " includes a member chosen by the county committee to fill a vacancy.

Objection is made to the proxy of William Lueck. William Lueck gave two proxies. It is contended that both proxies originally bore the same date, apparently May 3d. The petitioners rely on a proxy dated " May 6th, 1952 ". It is contended that this proxy bearing the latter date has been altered. This proxy has been examined and it is found that it has not been altered and that its execution was subsequent to the proxy on which the respondents rely. It is also found that the petitioners attempted to vote this proxy.

The 127 votes of Edward J. Cramer (43), Bernard Daley (42) and Daniel Fitzgibbons (42) should be deducted from the petitioners' claimed total. Edward J. Cramer was purportedly selected as a committeeman at a meeting of the Saratoga County Democratic Committee in September, 1951, and at the time of his appointment he was not an enrolled Democrat. Bernard Daley and Daniel Fitzgibbons in 1948 received a majority of the votes cast for committeemen in their election district, no one was elected from that district in 1950 or 1952 and at the time of their election neither was an enrolled member of the Democratic party. Enrollment is a condition to membership in the county committee, whether the election is at a primary or at a county committee meeting. (Election Law, § 12; § 17, subd. 1.) Deduction of the 127 votes of these ineligible persons from the petitioners' claimed total of 4,241 leaves a remainder of 4,114.

Valid objection is made also to the 45.5 votes of Aaron Bloodgood. In 1948 Aaron Bloodgood and Ellsworth Smith were duly elected committeemen in their district. In 1950 Harry McLane only was elected in that district. In 1952 no one was elected in the district. Both Aaron Bloodgood and Ellsworth Smith survived the election of Harry McLane. It cannot be said that

Harry McLane took the place of Ellsworth Smith nor can it be said that Harry McLane took the place of Aaron Bloodgood. Consequently, no one is in a position to determine which one of the two committeemen is entitled to hold over. (*Matter of Pansmith* v. *Williams*, 201 Misc. 759.) Deducting the 45.5 votes of Aaron Bloodgood from the previous remainder of 4,114 votes leaves a result of 4,068.5.

The potential vote of George Bilodeau (51.5) should also be deducted. George Bilodeau was made a member of the county committee September, 1951, at a county committee meeting and at that time was an enrolled Democrat. In November, 1951, he failed to enroll. At the Spring primary of 1952 he would have been ineligible for election. The question is whether by his valid selection in 1951 he was entitled to hold over. It would seem otherwise. In *People ex rel. Boyle* v. *Livingston* (106 Misc. 188, affd. 188 App. Div. 992) it was held that a committeeman did not cease to be committeeman by his failure to enroll during his term of office. The court said at page 192: " The statute does not, however, require that he continue to be an enrolled member during the entire term of his office. Mr. Erwin was an enrolled voter when elected, and therefore eligible." The *Boyle* v. *Livingston* case related to the committeeman's term of office. It did not relate to his holding over and continuing to fill the position to which he would have been ineligible for election and to which his election would have been void. That question was not before the court and was not decisive of the case. To find that Bilodeau continued to hold over in a position to which his election would have been void requires implying as law that which leads to unjust and absurd consequences. The 51.5 votes of Bilodeau should be deducted from the last-mentioned remainder of 4,068.5 leaving 4,017 votes.

In addition to 3,733.5 conceded votes the respondents claim 221 votes of Chester Normandin and Carl Hammond, which were in fact counted for the respondents. Carl Hammond was elected committeeman in 1950 and at the time of his election was enrolled as a Democrat. In 1952 he received the majority of the votes cast for committeeman but he was not enrolled at the time of his purported election. Chester Normandin was elected committeeman in 1950 and was an enrolled Democrat at the time of his election. In 1952 he likewise received a majority of the votes cast for committeeman. A dispute exists as to whether he was enrolled in 1952 but it is found as a fact that he was not enrolled. What has been said with reference to George Bilodeau

applies equally to Normandin and Hammond. Their votes should not be added to the respondents' conceded total óf 3,733.5. This, however, is not decisive. Even if they were added, respondents would have but 3,954.5 votes, less than the petitioners' remainder and valid total of 4,017.

In the circumstances here presented it is not impossible to determine who were rightfully elected. (Election Law, § 330, subd. 2.)

The petitioners ask for an order: '' (a) Determining and declaring valid, proper and legally effective the certificate of election executed on May 9, 1952, by Peter F. Hofsess as secretary of the Saratoga County Committee of the Democratic party and filed in the office of the Board of Elections of Saratoga County on May 9, 1952, and in the office of the Secretary of State on May 16, 1952, and determining and stating the names of the officers of Saratoga County Committee of the Democratic party elected at the meeting of said committee held at the city hall in the city of Saratoga Springs on May 6, 1952, and determining, declaring and adjudging that the persons named in the said certificate of election were validly and legally elected to their respective offices at said meeting as in said certificate stated; and (b) determining, adjudging and directing that the Board of Elections recognize the officers named in the said certificate of election as the legally elected and acting officers of the Saratoga County Committee of the Democratic party; ''.

An order may be submitted in accordance with '' (a) '' and '' (b) ''. (*Matter of Holley* [*Rittenberg*], 268 N. Y. 484; *Matter of Bannigan* v. *Heffernan,* 280 App. Div. 891.)

Items '' (c) '', '' (d) '' and '' (e) '' contained in the prayer for relief are superfluous.

Submit order on two days' notice.