Carlton A. Fisher, J.
This is a proceeding to have annulled certain proceedings of the Republican County Committee of Erie County, New York, which occurred on June 10 and 11, 1964 which purported to be its organizational meeting held after the primary election. Petitioners claim that there were such irregularities at the meeting that the proceedings are a nullity and that the officers purported to be elected thereat were not duly elected. They seek an order directing the county committee to reassemble under supervision to perform its duty to meet, organize and elect its officers.
The petitioners claim as irregularities in the meeting:
1. No oral roll call.
2. No rules adopted for the conduct of the meeting.
3. Vacancies in the county committee were not filled in the order of business prior to the election of the officers or at any time; and some persons were allowed to vote who were not entitled to vote and others who were entitled to vote were not permitted to vote.
4. The presiding officer refused to recognize committeemen on the floor of the meeting who desired recognition for many purposes including the desire to make a motion for a secret ballot in the election of chairman.
5. No nominee was declared elected chairman and there was no meeting of the tellers.
6. There was no announcement of the votes cast by the' chairman.
*838 7. There was no quorum present at the time of the alleged election of the officers other than the chairman.
8. That the presiding officer refused to allow committeemen to nominate officers other than the chairman or make any motions or nominations in connection therewith.
These irregularities are denied by the respondents and proof was taken on each alleged irregularity.
Prior to June 16, 1960 the Republican County Committee of Erie County apparently deemed it necessary to have its counsel prepare new rules and regulations for the committee, and counsel did prepare a draft of the new rules which were submitted to the committee and duly adopted by the committee on June 16, 1960. These rules, petitioners’ Exhibit No. 1 in evidence, were in effect at the time of the meeting on June 10 and 11, 1964. Section 9 of the rules reads as follows:
“ Section 9. Organization Meeting. The Chairman of the outgoing County Committee or his designee shall fix the time and place of the meeting of the newly-elected County Committeemen and shall preside until the Chairman of the new Committee is elected.
‘ ‘ The following shall be the order of business at the organizational meeting of the County Committee and so far as applicable at the other meetings of the County Committee and at the meetings of other Committees; unless change by majority vote.
“ 1. Call of Roll
“ 2. Adoption of Rules
“ 3. Filling of Vacancies
“4. Election of Officers and Committees , .
“5. New Business
“ 6. Adjournment ”.
Proof was taken in regard to these irregularities and as to the first alleged irregularity ‘ ‘ failure to call roll ’
The testimony shows that the chairman used the same method 'as had been used many times in the past and had the general chairman of the ward, town or city committees check the attendance from a tape containing the names of the committeemen in their ward, town or city and after checking the attendance of the committeemen they reported their presence or absence of the committeemen to the chair. Providing the tape contained the proper names of the committeemen, this method of roll call does not conflict with the rules which merely states: (1.) “ Call of Roll” and does not state exactly how it should be done. Following the precedent heretofore established, the method used was not an irregularity.
*839 (2.) Adoption of Buies.
This was next on the duly mandated order of business and was not done. The chairman testified that he conferred with the secretary of the committee prior to sending out notices of the meeting and prior to the meeting and that they, the two of them, decided not to conduct any other business at the meeting other than the election of officers and that that was all that they would permit to be done at the meeting.
Without the adoption of any ground rules as to how the meeting would be conducted there, of course, was no committee on credentials appointed and no rule as to whether the ballot would be secret or not or any other rules that would assist in carrying out the business of the meeting.
The chairman and the secretary were aware of the pending contest for chairman and of the demand by the petitioners for a rule permitting secret balloting. Various committeemen in the meeting tried to get recognition from the chair in order to make motions concerning balloting by secret ballot and other rules but they were not recognized by the chair and no new rules were ever considered. This, of course, being in accordance with the premeeting thoughts and discussions of the chairman and the secretary. The respondents denied that they failed to recognize anyone or deprive anyone from making the necessary motions. They claimed that many of the backers of the petitioners had bullhorns and were making unnecessary noises and did not stay in their proper assigned seats.
The facilities furnished were not adequate. There was a microphone on the platform and two microphones in the hall where the committeemen were seated, one on each side of the hall. With over 1,485 committeemen present out of the total of 1,846, it was rather hard to be heard unless you could as a speaker obtain access to one of the microphones which necessitated leaving the seat which the committeemen occupied and proceeding to a microphone and then getting recognition. It does not appear from the record that anyone got recognition except those who by prearrangement were listed on the agenda sheet used for the chairman, petitioners’ Exhibit No. 16, and for the nomination and seconding of Thomas W. Byan. Although denied by the respondents’ witnesses, several of the petitioners’ backers proved by a preponderance of the evidence that they could not get recognition or use the microphones. All of this deprived the petitioners of a substantial right and was an irregularity sufficient to require a voiding of all proceedings and requiring a new meeting and election. As to the contention of the respond *840 ents that at times the place of meeting was disorderly and that this disorder was caused by followers of the petitioners, the •evidence does not bear that out. The witness, committeeman Elfvin, one of the petitioners’ followers, who testified he tried to get the chair several times is shown in the picture, petitioners ’ Exhibit No. 20 in evidence, and it shows Elfvin standing with his hand raised in a sort of “ Statue of Liberty ” pose wearing a Ryan hat. On the other hand in the same picture is a chap wearing a Grimm hat and badge apparently waving his arms and with his mouth open, turned towards Elfvin with a look of belligerence on his face. If there was disorder it was incumbent upon the chairman to quiet the disorder or cease doing business until there was the proper atmosphere for the proper conduct of the meeting. Failure to do this was a grave irregularity.
(3.) Failure to Fill Vacancies.
This was the third order of business. As set forth in the duly existing rules of the county committee, there were 119 alleged vacancies in the ranks of the committeemen according to the list 'furnished by the Board of Elections. By the decision of the chairman and secretary not one of the holdover committeemen received a notice of the meeting where the Board of Elections listed their district or position or office as a vacancy. Many of the committeemen who had been duly elected two years before who had neglected to file for the 1964 primary were present. They were not allowed to vote. The chair did not recognize any of them as holdover committeemen.
Section 13 of the New York Election Law provides that members of State and county committees shall be elected at primary ' elections. The section also states: ‘ ‘ The members of both committees shall hold office until the election of their successors.”
Section 17 of the Election Law provides, in effect, in subdivision 1 that a vacancy exists in the case of death, declination, disqualification, removal from district or failure to elect a member, as in the case of a tie vote. This section mandates that ‘ ‘ the vacancy created thereby shall be filled by the remaining members of the committee ”. The rules of the Republican . County Committee of Erie County, N. Y., provide that the third order of business at the organizational meeting is the filling of vacancies.
. Any committeemen suffering no disqualifications were holdovers and as such should have had notice of the meeting and if present should have been permitted to vote. (See Matter of Hammer v. Curran, 203 Misc. 417.)
*841 Respondents submitted proof that over half of the alleged committeemen claimed by petitioners as holdovers in the 119 vacancies were disqualified by reason of resignation, death, not residing in the district or some other disqualification. Yet a goodly number of them remained, many of them attending the meeting and their presence was made known to the chair. They were not permitted to vote. These were irregularities. The respondents as a defense and justification for the chairman’s and secretary’s actions in making the decision not to take up any business other than the election of a chairman and other officers at the meeting call attention to the impracticability of any other course of action. They call attention to the fact that there were 1,846 county committeemen and that one roll call takes from four to five hours to complete it; and that if the 119 committee, vacancies were to be filled and each were contested that it would take four or five times 119 hours to conduct this voting to fill the vacancies and a couple of days to vote on the candidate for the offices. Respondents and officers further call attention to the fact that the last contest for chairman was about 30 years ago and that this contest was only anticipated two or three days before the meeting. This is not an adequate defense. True, the rules are a bit impractical for a contest, yet a contest must be anticipated. The rules could have been amended so that they would be practical and workable. The rules of the National Convention with over 1,300 committeemen are workable and opposition is always expected. It is noted, however, that the National Convention is not called into session at a meeting commencing at 8 o ’clock in the evening expecting to finish the same night. Arrangements are generally made to have a minimum of four days with anticipated longer sessions. With the present rules of the county committee unless they are amended it would be reasonable to expect a meeting to last several days or longer in order to properly function and arrangements should be made properly in anticipation of that eventuality.
If these 119 vacancies are not filled prior to the voting or if the holdover committeemen are not allowed to vote for the new officers hundreds of duly enrolled party members lose their right to select the leader of their party and the leader if selected under those conditions would not be the true leader of the party. Surely the Legislature in enacting sections 13 and 17 of the Election Law and the committee when they adopted the rules making the filling of vacancies mandatory prior to the voting for officers sought to protect the rights of the duly enrolled party members. This irregularity is sufficient in itself to void the proceedings and require a new meeting.
*842 (4.) The presiding officer’s refusal to recognize the committeemen from the floor who desired to move for a secret ballot was a grave irregularity.
(5.) Petitioners’ charge that no nominee was elected chairman and there was no meeting of the tellers was not proven by a fair preponderance of the evidence. A transcript of the voting was taken by a Supreme Court stenographer and that is petitioners’ Exhibit No. 8 in evidence, and adding the votes cast in the transcript could easily enlighten interested parties as to the number of votes cast and who allegedly won the chairmanship at that particular meeting. Petitioner Ryan was present most of the time and in close touch with his tellers and, apparently, according to the record and the testimony, accepted that the majority of votes was received by his opponent.
(6.) Petitioners claim there was no announcement of the vote cast for the chair and evidence shows that there was a lot of milling around and shouting after the voting for chairman but that there was no doubt as to the results of that vote. There appears to be no irregularity proven in connection with this charge.
(7.) Petitioners claim that there was no quorum present at the time of the election of the remaining officers. There is some evidence that it was about 3 o’clock in the morning at the time that the election for the remaining officers other than the chairman were acted upon and that many people left the auditorium, the meeting place. Petitioners, however, failed .to prove by a fair preponderance of the evidence that there was not a quorum present at the time.
(8.) Petitioners claim the presiding officer refused to allow the recognition of any of the petitioners’ followers to nominate Phyllis M. Kelly for vice-chairman and Gladys Drewelow for assistant secretary or any other nominations for the positions of secretary, treasurer and assistant treasurer. The evidence does show that several of the petitioners’ followers attempted to obtain recognition from the presiding officer to make these nominations. This is denied by the respondents. But the preponderance of the evidence is in favor of the petitioners and the failure to recognize petitioners’ followers for the purpose of making nominations for these offices is a substantial irregularity.
In view of the fact that each irregularity found was of a substantial nature and could have affected the result, it is impossible to determine who rightfully was elected.
The organizational meeting and proceedings of June 10 and 11, 1964 and any action taken thereat is declared null and void *843 and the meeting should be reconvened prior to the 15th of September, 1964.
The outgoing county chairman and the secretary are directed to send a proper legal notice of the reconvened organizational meeting to be held at a suitable time on or prior to September 15, 1964. Said meeting to be conducted and held in accordance with the Election Law and the rules of the Erie County Republican Committee. Submit order accordingly.